## STATE v. COLE
(No. 1670; June 2, 1931; 299 Pac. 1040)

For the plaintiff in error there was a brief by *O. N. Gibson,* of Riverton, Wyoming.

210

For the defendant in error there was a brief by *F. B. Sheldon, Jr.*, County and Prosecuting Attorney, of Lander, Wyoming.

RINER, Justice.

The Riverton Valley Drainage District, a corporation, as relator, filed its petition in the District Court of Fremont County, naming therein Charles T. Cole, County Treasurer of that county, as defendant, the substance of the pleading being as follows: After averring the incorporation of relator under the state drainage district law, the official character of the defendant, the due construction of drainage works for relator and an authorized assessment to pay the cost of these works in the sum of $155,044.99, the petition alleges that on December 1, 1921, under proper authority, the drainage district aforesaid issued and sold its coupon bonds to the full amount of the assessment last mentioned, and thereafter, pursuant to authority first obtained—the particular date of the issue not being stated—issued and sold its refunding bonds to the amount of $150,000, thereby liquidating all its prior bonded indebtedness; that relator certified to the Board of County Commissioners of Fremont County the proper proportionate shares chargeable to each lot and tract of land on account of maintenance of the drainage works and the interest on

said bonds, whereupon, through the action of said Board and thereafter through the action of the county assessor, the amounts so certified were assessed against the proper lands and extended upon the general county assessment roll, said roll being then delivered to the County treasurer, who was, by law, required to collect same in the same manner and at the same time as state and county taxes.

Paragraphs 11, 12 and 13 of said petition charge that since January 1, 1929, the county treasurer has disobeyed the aforesaid legal requirement as to the collection of these assessments by ''offering to accept and by accepting the state and county taxes levied against district lands, without, at the same time requiring the payment of the drainage assessments due and unpaid against the same;'' that he intends to continue this policy which will ''continue to result in discouraging, retarding and reducing the payment of such assessments, and has resulted and will continue to result in encouraging district land owners to pay the state and county taxes upon their said lands, and permit the drainage assessments thereon to become and continue delinquent;'' and that there are tracts of land which will not sell at delinquent tax sale for sufficient to discharge the aggregate amount of such taxes and assessments, and that the defendant's action ''in accepting and receipting in full, for the state and county taxes against district lands, without demanding and requiring, at the same time, the payment of the drainage assessments, also, and without apportioning to Relator its just share of the amount thus collected, has resulted and will continue to result in discharging such lands from the lien of such state and county taxes, thereby reducing the security of Relator and the holder of its bonds, to their great injury and loss.'' Relator prayed for the issuance of an alternative writ of mandamus, requiring that defendant desist from permitting the payment of the state and county taxes against drainage district lands without requiring at the same time

the payment of unpaid drainage assessments against said lands or that he show cause why he should not do so.

The writ thus sought was issued, and defendant, in response, filed an answer incorporating therein, first, a general demurrer to relator's petition; second, an admission of all allegations therein not denied in the answer; third, a denial of each and all the allegations of paragraphs 11, 12 and 13 in said petition; and fourth, an affirmative statement of the facts regarding the collection of drainage assessments by the defendant for the relator in outline as follows: That there are a number of drainage and irrigation districts in Fremont county, including in the number the relator, for whom defendant collects assessments; that the liens for state, county and school district taxes being separate and distinct from the liens provided by law for drainage and irrigation districts, in order to avoid confusion, it is necessary to keep such assessments separate from said taxes upon the combined assessment roll and tax list of the county, and they are consequently so kept. Defendant's answer then specifically alleges "that he has not, nor does he expect to collect County and State taxes in preference to the drainage assessments of the Plaintiff, or the drainage and irrigation assessments of the other Districts above named; nor has he, nor does he expect to collect any drainage assessments or irrigation assessments in preference to County, State and School District taxes, but rather does he hold his office open to receive from all tax-payers the amount due from them by way of County and State taxes, drainage assessments or irrigation assessments, and taxpayers are permitted to pay either County and State taxes or irrigation assessments or their drainage assessments, without reference the one to the other."

"3. That the defendant has not refused nor will he refuse to receive payment of any drainage assessments of the plaintiff's when the same become due and payable, upon their being tendered to him as such county treasurer; that said drainage assessments according to the records of

his office become due and payable at the same time and if not paid become delinquent at the same time and in the same manner as state, county and school district taxes; that upon the failure of property owners to pay drainage assessments levied upon real property within the Plaintiff district and the same become delinquent the defendant will proceed to foreclose the plaintiff's lien upon said real property for said assessments at the same time and in the same manner as is provided by law for the foreclosure of the lien for state, school district and county taxes, without discrimination against or in favor of the county or the district.''

Relator demurred to this answer as ''insufficient in law on its face.'' Upon submission to the court, the demurrer was overruled, and the relator declining to plead further, judgment was entered denying the peremptory writ of mandamus prayed for by relator and awarding defendant his costs. Relator, saving its exception to this ruling, has brought the case here for review by proceedings in error.

The question for determination then is, whether the County Treasurer of Fremont County may legally receive the payments due and tendered for state, county and school district taxes upon lands embraced within the Riverton Valley Drainage District, without requiring the taxpayer to pay also the assessments made and levied for relator's purposes upon the same property.

The procedure indicated by law for the enforcement of assessments made by drainage districts is, briefly, as follows: After the commissioners of the district have certified and delivered to the county commissioners the district assessment roll, the commissioners last mentioned, at the time of making the requisite tax levy for county purposes, are required to levy and assess against ''each lot, tract and easement of land and against each corporation the respective amounts levied and assessed against the same on said assessment roll;'' the roll is then delivered to the county assessor, who must extend upon the tax roll of the county

the several amounts aforesaid. (§ 1062, W. C. S. 1920, as amended by Chapter 166, Laws of 1921, and § 5 of Chapter 10, Laws of 1923.) All drainage assessments are to be "collected by the same officer (the county treasurer) and in the same manner and at the same time as state and county taxes are collected, and when collected" must be paid to the treasurer of the drainage district, except what may be due for principal and interest of bonded indebtedness, which is retained and paid by the county treasurer. (§ 10 of Chapter 10, Laws of 1923.)

These drainage assessments, from the time of their confirmation by court order made previous to being placed on the assessment roll of the district, "constitute a perpetual lien in amount not in excess of the benefits severally assessed, upon all the land and other property against which such assessment shall be levied. * * * to which only the lien of the State for general state, county, city, town or school taxes, shall be paramount, and no sale of such property to enforce any general state, county, municipal, or school tax, or other lien shall extinguish the lien of such assessments." (§ 9 of c. 10, Laws of 1923.)

The revenue laws of the state for the collection of taxes on real property for county purposes, except as modified by the provisions of the drainage district legislation, are made applicable for the purposes of the drainage district act. In advertising property for sale for delinquent taxes, the county treasurer is required to "show in a separate column in such advertisement the amount of unpaid drainage assessment levy against each lot, tract and easement of land in said district." The law then directs that: "At the time and place of sale of real property for state and county taxes, the county treasurer shall also separately sell the land for delinquent drainage district assessments and shall issue separate certificates of sale therefor." After requiring that the first bid received in an amount sufficient to pay the assessment shall be accepted, it is provided that where no purchaser for the land thus offered for sale for delinquent

drainage assessments appears, the land is to be struck off to the drainage district and the county treasurer must make a certificate of purchase to it for the land thus sold. The owner of the land may redeem from such sale at any time within eighteen months from date of the sale by making the proper payments. If no redemption is made, the county treasurer issues a deed to the purchaser. (§ 6 of c. 10, Laws of 1923.)

It is said that as the law (§ 10 of c. 10, Laws of 1923, supra) provides that "all drainage assessments shall be collected by the same officer and in the same manner and at the same time as state and county taxes are collected," the legislative intention was thereby to prohibit the county treasurer from collecting the general state and county taxes on lands within a drainage district unless the taxpayer also pays the drainage assessment thereon. The case of Moore v. Gas Securities Co., 278 Fed. (C. C. A. 8th Circuit) 111, is cited as supporting that position. There the holder of bonds of an irrigation district in Colorado sought to compel the county assessor to total the amount of the irrigation district assessment with the state, county and other taxes, to the end that the county treasurer should be "commanded to collect the said total tax on the lands in said district at the times provided by statute, and shall not receive or receipt for payments made for less than said total taxes," and also to require the county treasurer to conform to such command. This relief was granted by the trial court and affirmed in the cited decision. The Colorado law, at the time the bonds held by the plaintiff in the case were issued, provided that:

"It shall be the duty of the county treasurer of each county in which any irrigation district is located, in whole or in part, to collect and receipt for all taxes levied as herein provided in the same manner and at the same time, and on the same receipt as is required in the collection of taxes upon real estate for county purposes."

Subsequently a law was passed establishing a state tax commission, investing it with power to prescribe a uniform system of procedure in the offices of county assessors and the form and size of all tax schedules, tax rolls and warrants, etc., used in such offices, and directing that no other system, forms, blanks, etc., should be used therein excepting those prescribed by the commission. Pursuant to that authority the state tax commission ordered the assessor aforesaid to make up a separate assessment roll for the irrigation district. Later, still another law amending the district irrigation act of Colorado was passed providing for a sale for delinquent irrigation district taxes only, and, in the event of no bid being made at the sale, the land was to be struck off to the irrigation district, instead of to the county, and that a certificate of sale should be issued by the county treasurer to the district. Both the trial and the reviewing courts held that these later laws impaired the obligation of the contract represented by the bonds of the irrigation district in the hands of the plaintiff.

It is to be noted that the Colorado statute first above mentioned, varies from the provisions of Section 10 of Chapter 10, Laws of 1923, supra, in that by it the county treasurer is directed to collect and receipt for all district taxes levied ''on the same receipt'' required in the collection of general taxes. Also, it appears, from the statutory provisions referred to in the opinion of the trial judge adopted in the appellate court, that the county became the purchaser, if no bidders appeared, that the law provided for no separate sale of the property for the irrigation district tax, and, contrasting the procedure under the earlier law with that called for by the subsequent enactments, that opinion says:

''These legislative acts and the practice under them give the holders of bonds a different remedy for their collection from the one which they had at the time the bonds were issued. The material difference is this, formerly all taxes, state, county, school and district, had to be paid or none,

now the taxpayer may let the district taxes become delinquent but pay all other taxes; formerly there was one tax sale for all delinquent taxes, now there may be two, one for district and one for all other taxes; formerly one tax sale certificate of purchase was issued for all delinquent taxes, now there may be two.''

It seems to us quite evident that the procedure instituted under the later Colorado statutes more closely resembles the system for collection of drainage assessments provided by our legislature in Chapter 10, Laws of 1923, than does that prevalent under the earlier law of our sister state. This fact would appear to make the cited case an authority against relator's contention.

In passing it may be noted, that the Supreme Court of Colorado, in the case of Interstate Trust Co. v. Smith, 66 Colo. 525, 181 Pac. 126, held that a county treasurer might accept general state, county and school taxes levied against lands in an irrigation district without then requiring payment of irrigation tax assessments. This case was reviewed by the Court of Appeals in the opinion in the Moore case, supra, but was not followed for the reason that it did not appear that the provision of the earlier Colorado irrigation district law quoted above was considered by the state Supreme Court.

In Booth v. Clark, 42 Idaho 284, 244 Pac. 1099, 1100, although the law provided that the amount of drainage district assessments should be added to the general taxes of the landowners and collected therewith, it was held that the collector was obliged to receive general taxes tendered by the taxpayer, who nevertheless declined to pay a drainage district assessment. In the course of the opinion announcing this conclusion, it was said:

''Assessments for drainage district purposes are based upon benefits to accrue to the landowner with the district, and must advance his proprietary interest. Taxes are levied for governmental purposes. There is thus a marked distinction between assessments and taxes, and, necessarily,

the construction of the statutes with reference to taxes will not be the same as when construed with reference to assessments.

"There are cases which hold that, while special assessments for local benefit are taxes in a general sense, in that the authority to levy them must be derived from the Legislature, they are, nevertheless, not to be considered as taxes falling within the restraints imposed by the Constitution, although the principle of uniformity governs both. 2 Cooley on Taxation, 1181 (3d Ed.); Raleigh v. Peace, 14 S. E. 521, 110 N. C. 32, 17 L. R. A. 330.

"Much stress is laid upon the provisions of the statute (C. S. § 4552), which provides: 'And such amount,' referring to the levy for maintenance and repair, 'shall be added to the general taxes of such landowners and collected therewith;' and C. S. § 4527, where the following language is used: 'And shall be collected in the same manner as other taxes and subject to the same right of redemption,' and 'the amount so designated shall be added by the auditor to the general taxes of said person, persons or corporation, according to said notice, upon the assessment rolls in his said office, and collected therewith'; also C. S. § 4527, where the following language is found: 'And shall be collected in the same manner as other taxes and subject to the same right of redemption,' and 'the amount so designated shall be added by the auditor to the general taxes of said person, persons or corporation, according to said notice, upon the assessment rolls in his said office, and collected therewith'; and, further, C. S. § 3239, which requires the collector to keep a collection register in which must be entered the amount of state, county, city, town, village, school district, or other tax collected.

"It will be observed that our statutes contain no prohibition restraining the tax collector from receiving the general taxes to the exclusion of the drainage district assessment, but provide for the certification to the auditor of the drainage district assessment, and authorize him to receive payment thereof at the same time that the general taxes are paid, and, if not paid, the assessment becomes delinquent, and the land is subject to sale and redemption, as in the case of a sale for general taxes. * * * *

"Since there is no statute in this state that prohibits a taxpayer from paying his general tax to the exclusion of a drainage district assessment, there is no authority for

holding that it is the mandatory duty of the tax collector to refuse to accept general taxes tendered where the taxpayer refuses to pay the drainage assessments. The drainage assessment having been placed upon the tax roll with the other taxes, it is the duty of the tax collector to receive payment and to receipt therefor, and to inform the taxpayer of the assessment, and that the same is a lien upon his property, but the tax collector is not authorized to enforce its collection by refusing to accept general taxes.''

While there was dissent from these views, as expressed by a majority of the court, it appears to have been chiefly predicated upon the peculiar language of the Idaho statute, (C. S. 4552) which required the drainage assessments to be ''added to the general taxes of such landowners and collected therewith,'' and it was hence argued that the collector of taxes had no discretion other than to accept payment of either, all or one-half of the total of the taxes and assessments on the real property assessment roll.

The Wyoming statutes contain no such language as that relied on in the minority opinion in the case last cited, neither do they have any provision either in express terms or inferentially prohibiting the county treasurer from receiving general state, county and school district taxes upon lands situated in drainage districts, unless the payment of the drainage assessments upon those lands is also tendered by the taxpayer. Further, as we have already seen, although such assessments are to be collected at the same time, in the same manner and by the same officer, as general taxes are, yet it also appears clearly to have been the legislative intention to have the collector keep them separate and distinct from the general taxes in a number of particulars, viz. in advertising lands for sale for delinquency, in the sale itself, in the purchaser in case no bidder appears at the sale, and in the period allowed the owner for redemption from sale, etc. The lien for drainage assessments, too, is made distinct from that for general taxes and subordinate to it.

While it is argued that certain ills, as pleaded in paragraphs Nos. 11, 12, and 13 of plaintiff's petition, will flow from the county treasurer's action in thus receiving the general taxes without exacting at the time the payment of the drainage assessments, it will be recalled that the allegations of these paragraphs were put in issue by denial. Aside from that, however, such considerations are for the legislature. In our view of the matter, we would be obliged to incorporate additional or different language into the drainage district law in order to reach the result insisted upon by relator. This we are not permitted to do. We wholly fail to see how the security of the drainage assessment is impaired through the taxpayer being permitted to remove the paramount lien of the general taxes upon his land by paying them off and thus leaving the property unaffected thereby to respond in full to the lien of the drainage district assessment, which is not paid. As an underlying reason for the law being in the form it is, it may perhaps be suggested that the legislature thought it quite as important that state and county and school district taxes should be collected as assessments for drainage districts. Indeed, as previously indicated, the lien of the former is made paramount to that of the latter.

The following cited cases are instances where, under appropriate statutory provisions, it has been held proper for the collector to receive general state and county taxes upon certain lands, notwithstanding the taxpayer declined to pay assessments levied by a particular district for special benefits on such property: Central Pacific Railroad Co. v. Gage, 96 Ore. 192, 189 Pac. 643; Howell v. Lamberson, 149 Ark. 183, 231 S. W. 872; Eason v. Prairie Pipe Line Co., 149 Ark. 669, 234 S. W. 165; State ex rel. Moore v. Furstenau, 20 N. Dak. 540, 129 N. W. 81; Hackney v. Elliott, 23 N. Dak. 373, 137 N. W. 433.

It appears to be suggested that construing the drainage district law as has the county treasurer in this case, results in constitutional complications through impairing the con-

tractual obligation evidenced by the outstanding bonds of the drainage district. But the bond holders are not here complaining. In Salt Creek Transportation Co. v. Public Service Commission, 37 Wyo. 488, 263 Pac. 621, 623, this court said:

"The law is well settled that it is not sufficient for a party to say that a statute is unconstitutional as to other persons or classes of persons. It must appear that it is unconstitutional as to the person attacking it. 12 C. J. 762, 763; Zancanelli v. Coal & Coke Co., 25 Wyo. 511, 173 Pac. 981."

See also 12 C. J. 760, § 177, and cases cited. Further, although the exact date when the refunding bonds now in the hands of purchasers were issued is not definitely stated in the pleadings before us, that date is given in the brief of the defendant in error as May 1st, 1924, or after all the drainage district laws discussed above were enacted by the state legislature. This statement does not seem to be disputed, and, if true, would itself remove the constitutional objection urged.

In our opinion the judgment of the District Court of Fremont County was right, and it is accordingly affirmed.

*Affirmed.*

Kimball, C. J., and Blume, J., concur.