**BROWN–CRUMMER INV. CO. v. CITY OF BURBANK et al. (two cases).**

District Court, S. D. California, Central Division.

Dec. 10, 1936.

H. A. Postlethwaite, of San Francisco, Cal., Elcock & Martin and James G. Mar-

tin, all of Wichita, Kan., and Roscoe R. Hess, of Los Angeles, Cal., for plaintiff.

Ralph W. Swagler, City Atty., of Burbank, Cal., and James H. Mitchell, William Mackenzie Brown, and Leon T. David, all of Los Angeles, Cal., for defendant City of Burbank.

Everett W. Mattoon, Co. Counsel, and J. H. O'Connor, Deputy Co. Counsel, both of Los Angeles, Cal., for defendant county officials.

E. C. Pyle, of Los Angeles, Cal., for interveners Paul B. Hammond et al.

Victor Ford Collins, of Los Angeles, Cal., for intervener Gertrud Wieczorek.

McCORMICK, District Judge.

The Brown-Crummer Investment Company, a corporation of the State of Kansas, as complainant, filed two suits in equity against the City of Burbank, a municipal corporation in the County of Los Angeles, State of California, and certain public officers thereof and of Los Angeles County whose official duties relate to street improvement proceedings under applicable statutes of the State of California, as defendants. The two suits have been consolidated. The issues in both are identical, except that one relates to street improvement bonds that were issued by the City of Burbank as series VII to pay for the improvement of part of Grinnell Drive and other streets in a locality known as the Ben-Mar Hills subdivision in said city, while the other concerns series VIII of the same street improvement bond issues. Series VII of the bonds was issued on August 25, 1925, and series VIII on June 17, 1926.

The bills of complaint, after setting out the proceedings taken by the municipal authorities under the California Improvement Act of 1911 (Stat.1911, p. 730, as amended), which culminated in the issuance of the bonds in suit for the purpose of raising sufficient money to discharge finally the unpaid assessments on the cost of the improvement, amounting to $311,355.34, aver the purchase and ownership by complainant of series VII bonds in the principal amount of $114,000, and of series VIII bonds in the principal sum of $35,000. It is also alleged that the bonds bear interest at the rate of 7 per cent. per annum and that they are coupon bonds maturing and payable in ten equal annual installments commencing July 2, 1926, as to series VII, and July 2, 1927, as to series VIII.

These allegations in the bills of complaint are not denied by the defendants and stand as admitted by them and by all other parties appearing in the suits. It is then alleged that beginning with the fiscal year 1925-1926 assessments that should have been paid and collected became delinquent and unpaid upon each of said series of bonds and that the real property upon which the delinquent assessments were and are a lien was from time to time sold at tax sales, and that the City of Burbank, or the State of California on behalf of said city, became the purchaser thereof at such sales pursuant to applicable statutes of California.

These allegations are also admitted by defendants, except that the validity of the respective tax sales to the city, or to the State of California as the agent of the city, is contested and denied by the defendants.

The bills then substantially allege that complainant duly presented for payment at the respective due dates all bonds and coupons owned by it, but that no payments have been made and that the authorities of the municipality have refused to make any payment, upon the sole ground that there was not sufficient money in their hands in the funds created for the payment of the bonds and interest coupons with which to pay the entire amount that was due upon the respective series of bonds that were outstanding and unpaid.

Then follow averments in the complaint, some on information and belief, of multifarious irregularities, omissions, and misconduct by the municipal authorities and the city's agents regarding their respective duties relative to complainant's bonds under the California Improvement Bond Act of 1915 (Stat.1915, p. 1441, as amended). These assignments cover twelve pages in the complainant's bill, and it is considered unnecessary to set them out in detail in this memorandum. They all relate to governmental acts and to what complainant claims are the statutory duties of such public officers under the aforesaid Improvement Bond Act of 1915. There is no claim of dishonesty or corrupt motives by any one.

There is an allegation by complainant that, notwithstanding repeated demands by it and by others that the defendants and the city council of Burbank cause assessment foreclosure suits to be instituted and prosecuted "against the delinquent lands and for the collection of the delinquent installments

of assessments," as provided for by sections 11(b) and 11(c) of the Improvement Bond Act of 1915 (as amended by St.1927, p. 889), the defendants did not bring or prosecute any of such foreclosure suits until June, 1930, that those suits that have been commenced have not been diligently prosecuted, and that no sales have been made or attempted as the result of the foreclosure suits commenced, and therefore no moneys have been paid into the redemption fund by reason of such foreclosures. It is further averred by complainant, on information and belief, that, because of the neglect and delay by the defendants in commencing the foreclosure suits and prosecuting them to judgment and sale, the lands cannot be sold for an amount sufficient to discharge the delinquencies, but that, if defendants had exercised diligence, the lands could and would have been sold for an amount not less than the several judgments against them, and the moneys derived therefrom would have been transferred into the redemption fund and the delinquencies in complainant's bonds would have been paid.

At the hearing of these suits on the merits the complainant dismissed the actions against all of the individual defendants in their personal capacities, and in their brief the complainant's attorneys state: "While various City and County officials were originally named as parties defendant in both cases, yet, the plaintiff is primarily seeking money judgments against the City of Burbank, the other parties being proceeded against in their official capacities so that any decree of the Court herein rendered may be readily enforced."

The demand of complainant in substance is that it have a general judgment against the City of Burbank for the face value of its bonds and interest coupons which are past due and delinquent, together with interest after maturity on the principal sums of bonds presented at the respective due dates, and that this court should regard the defendant municipality as a trustee whose absolute liability and obligation under the bonds and under the aforesaid Improvement Bond Act of 1915 and in the light of the evidence in this record is to pay and discharge the respective installments of principal and interest when due, and that therefore the city should now be compelled to account to complainant accordingly.

Issue has been joined by defendants by separate answers, wherein no claim is made by any of them to the money that has been collected upon the assessments and that is now in the hands of public officers or agents of the city or impounded in the registry of this court for the account of said bonds. On the contrary, the defendant city and its officers admit that all such money belongs to the bondowners and will be distributed and paid to the several bondowners as their respective rights thereto shall be determined by the court. The defendants, however, deny that the city or its public officers or tax collection agencies are trustees of the bondholders to the extent asserted by complainant, and also deny that the city is generally liable for the payment of the delinquencies that have ensued in any of the bonds of complainant or other bondowners.

The city also alleges that after conferences with complainant's attorney during the month of October, 1929, the council of the city, at complainant's application and request, passed resolutions on December 5, 1929, ordering and directing that all assessments then delinquent upon the assessments levied for the purpose of paying off all bonds in series VI, VII, and VIII be foreclosed, and that such foreclosure suits were ordered and commenced at the request and express consent of the complainant. After denying that these suits have not been prosecuted with diligence or that the suits have been futile, the city alleges that a considerable sum of money has been paid into the redemption funds by those against whom the foreclosure proceedings have been commenced, in order to redeem their property from foreclosure sales. The city acknowledges its liability to pay all money now in its treasury that has been deposited as payments on the bonds in suit, and asks this court to determine priorities and rights thereto among the bondholders respectively and to decree distribution accordingly.

Subsequent to the institution of the two actions, the complainant by supplementary bill obtained an order of this court dated February 6, 1935, that brought into the consolidated suit as interveners all parties who owned or held bonds in any of the eight series of street improvement bonds that the city had issued for the improvement of part of Grinnell Drive, and also by such supplementary bill the complainant had brought into and had impounded in the registry of this court all of the money that had been accumulated in the redemption funds in the hands of the city treasurer of

Burbank for the payment and retirement of outstanding street improvement bonds. Upon the petition of complainant the defendants have been restrained until further order of the court from paying or disbursing to any one any money that has been paid into the redemption funds for the discharge of the obligations of the bonds. Later, pursuant to stipulation, all of the interveners who owned such bonds in series I to V, inclusive, were dismissed from this suit and all money that had been impounded herein in payment of the bonds in such five series was released from the registry and ordered returned to the city treasurer of Burbank for distribution by such officer pro rata to the bondholders entitled thereto. There are therefore left in this court as suitors in the consolidated action the owners of bonds in series VI, VII, and VIII of the aforesaid bond issues. Series VI of said bonds was issued on June 18, 1925, in the aggregate amount of $210,350.68, and bonds of this series are also payable in installments during a ten-year period commencing July 2, 1926.

Many of the interveners other than Paul B. Hammond et al., join with the complainant in its hereinbefore mentioned allegations of irregularity, omission, and misconduct of the defendant municipal corporation and its public officers and tax collecting agencies, and also join with complainant in the demand for a general judgment against the city as well as for an accounting herein. There is also projected by certain interveners, principally Gertrud Wieczorek and Paul B. Hammond et al., the further question of priority rights as between bondholders owning delinquent and unpaid bonds in the same series as to the money now on deposit and impounded, inasmuch as there is insufficient money to pay and discharge the obligations of all delinquent bonds in any of series VI, VII, and VIII of the bonds in suit.

The importance of this collateral issue between the bondowners is obvious when the wide disparity between the total money on hand for payment on the bonds and the amounts admittedly overdue and unpaid on them is considered. The evidence established that as of May 13, 1935, the delinquencies aggregated approximately $388,-700, with interest for 4½ years at 7 per cent. per annum, while the total amount available in the redemption fund at that time was not much over $100,000, and it is quite probable that a similar relative insufficiency continues to exist.

The record shows that since about March 1, 1931, there have been no payments made to the bondholders on any of the three series of bonds remaining in suit. It also appears that the city authorities have at all times provided assessments and have levied such assessments upon the land benefited by the aforesaid street improvement and have paid into the redemption funds all assessments that have been paid by property owners whose property is within the assessment district, as well as all redemption money that has been received on sales, but that the city has transferred no other city funds to the bond redemption funds, nor has it at any time (unless it has done so since the hearing of this suit on the merits, in compliance with the writ of mandamus issued on August 14, 1936, by the California Supreme Court in its recent decision in Hammond v. City of Burbank, 59 P.(2d) 495, 498) levied any special tax on all the taxable property of the city for the purpose of raising funds to feed the redemption funds. Moreover, the city, while collecting interest on deposits of moneys in the redemption funds, and also penalties from redemptions, has not retained such interest and penalties in the redemption funds, but has used and disbursed these payments for other municipal purposes than in the discharge of its obligations with respect to the redemption funds.

One other factual matter should be stated before considering the legal features of the suit.

It was shown that the first demand by the tax collector that the city provide funds for the payment of delinquent assessments and interest, either by the transfer of general funds to the redemption funds as permitted and authorized in section 11(c) of the Improvement Bond Act of 1915, supra, or by the levy of a special tax as required by section 12 (as amended by St. 1923, p. 304) and section 16, subd. a (as amended by St.1921, p. 230) of said act, was made in August, 1932, notwithstanding the delinquency experiences in the bond payment activities of the city that have been mentioned earlier in this memorandum. It does appear that demands by the tax collector have been made subsequently each year since 1932 and that no action has

been taken by the city authorities upon any of the demands, unless it has occurred recently since the submission of this action.

The sole basis of jurisdiction of these suits in the federal court is the diversity of the citizenship of the parties. There is no federal question presented or involved, and the issues to be determined are the contractual obligations of the City of Burbank on the bonds in suit under the California Improvement Bond Act of, 1915, supra.

■ Such issues depend entirely upon the proper interpretation of the aforesaid state statute, and, while the construction made by the Supreme Court of the state to this act is not binding upon the United States courts in cases arising under it, such decisions of the highest state court are highly persuasive and should not be disregarded or rejected except for the most cogent and convincing reasons, such as would leave little doubt of the error of the state court. No such reasons exist in this suit.

In an early decision, in Liebman v. City and County of San Francisco, 24 F. 705, 710, the United States Circuit Court in California expressed the rule just stated as follows: "Conflicts between state and federal tribunals, in the interpretation of state statutes, are always to be avoided if possible. The federal courts will therefore follow the exposition of the state courts, unless it conflicts with or impairs the efficiency of some principle of the federal constitution, or of a federal statute, or a rule of commercial or general law."

The statute that is involved here has been the subject of much study and consideration by the Supreme Court of California. The two decisions in American Co. v. City of Lakeport, 26 P.(2d) 490, and Id., 220 Cal. 548, 32 P.(2d) 622, respectively, as well as pronouncements in Union Safe Deposit Bank v. City of Menlo Park, 3 Cal.(2d) 264, 43 P.(2d) 811; Southern California Roads Co. v. County of San Luis Obispo, 4 Cal.(2d) 220, 48 P.(2d) 34; Griffith Co. v. County of Los Angeles, 4 Cal.(2d) 222, 48 P.(2d) 35; Sawyer v. County of San Luis Obispo, 4 Cal.(2d) 776, 48 P.(2d) 35, and the recent rulings on some of the identical questions in the instant suits in Hammond v. City of Burbank, supra, manifest the importance and closeness of the litigated questions herein, and the difficulty that has been experienced by the California Supreme Court in deciding them.

All of the aforesaid proceedings before the California Supreme Court were upon petitions for writs of mandamus, but nevertheless in them many of the major issues before this court have been finally determined, and we are not disposed now to differ with the construction therein placed upon sections 11, 12, and 16 of the Improvement Bond Act of 1915 of the State of California.

■ There have been changes in the status of the City of Burbank as a municipality since the bonds in suit were issued, and there have been amendments to the Improvement Bond Act of 1915 since that time, but the rule that must control our action is the situation that existed, both as to the city's responsibilities and as to the scope of the state statute as of the time of the issuance of the bonds. Burbank was then a city of the sixth class, existing under the general laws of the state of California, and the act involved did not then contain all of the features that are now found in this law.

■ When the act as it existed in 1925 and 1926 is considered in its entirety, it discloses a legislative intent to impose no general obligation or liability upon the city by reason of the issuance by the city of street improvement bonds.

Section 6 (as amended by St.1921, p. 226) provides that the city will pay the amount of the bond "out of the redemption fund" and that the bond "is payable exclusively out of said fund," and section 3 (as amended by St.1923, p. 301) states that "under no circumstances shall said bonds or the interest thereon be paid out of any other fund" than the redemption fund that the act requires shall be kept by the city treasurer and fed solely in the specific ways designated in the statute, and section 11, subd. a (as amended by St.1923, p. 414), shows the limited scope of the trust relationship that is enjoined upon the city by reason of its having issued the bonds, by these words: "In the event of such bonds being so issued, then the assessments, which shall be unpaid * * * together with interest thereon, shall remain and constitute a trust fund for the redemption and payment of said bonds and of the interest which may be due thereon. Such assessments * * * and each installment thereof and the interest and penalties thereon shall be and shall continue to constitute a lien against the lots and parcels of land on which made, until the same be paid, but

for a period not exceeding the time within which an action might be brought on the last series of bonds issued upon the security of such unpaid assessments," which under section 11(c) of the act (as amended by St.1927, p. 889) is not later than four years after the due date of the last installment of principal.

These clear expressions of restriction relative to payment of bonds issued under this act negative any general obligations on the part of the city to pay or to guarantee the payment of the bonds in controversy. The city is obliged to create the redemption fund and to take such measures that the act requires to feed this fund to the end that the bonds may be paid, and can be required by mandamus to do so, but it is impossible to find any warrant in the act for imposing general liability upon the city to pay the principal or interest of the bonds at this time, notwithstanding omissions on the part of municipal officers and agents to conform strictly to duties reposed in them by this statute.

Moreover, the verbiage of the bonds in suit constitutes another negation of any general obligation on the part of the municipality to pay them or to underwrite the payment of them unconditionally.

Each bond recites that "the City of Burbank will * * * *out of the redemption fund for the payment of the bonds issued upon the assessments made for the work upon and improvements on certain streets* * * * pay to bearer, the sum of —————— dollars, with interest, * * * all as hereinafter specified, and at the office of the treasurer of said municipality.

"This bond is one of several annual series of bonds of like date, tenor and effect, but differing in amounts and maturities, issued by said municipality under said act for the purpose of providing means for paying for the work and improvements described in said resolution of intention, and is secured by the moneys in said redemption fund and by the unpaid assessments made for the payment of said work, and, including principal and interest, *is payable exclusively out of said fund.*" (Italics supplied.)

Not only do the act and the express terms of the bonds dispel any idea of general obligation on the part of the municipality to pay the bonds, but the authoritative decisions of federal and state courts construing this and similar legislative schemes deny any such general liability or guaranty under municipal obligations of the kind under consideration.

In an early case entitled Jewell v. City of Superior, 135 F. 19, 21, 22, the Eighth Circuit Court of Appeals had occasion to examine the scope of bonds issued by a municipality for the payment of costs of the improvement of certain of its streets, in proceedings that are not unlike those involved in the instant suit, and in discussing the liability of the city said: "The municipality is statutory trustee for collection, bound to the exercise of due diligence to collect according to law, enforcing the lien through municipal machinery as agent of the owners of the bonds, and answerable for failure to perform this duty, or in paying over or in failing to pay the money collected. City of New Orleans v. Warner, 175 U.S. 120, 132, 20 S.Ct. 44, 44 L.Ed. 96. It is not a guarantor of collection; and, unless there be such failure in duty, there cannot be liability for non-collection."

The exclusive sources of payment that are nominated in the bonds in suit are like those discussed by the Ninth Circuit Court of Appeals in Moore v. City of Nampa, 18 F.(2d) 860, 862, affirmed by the Supreme Court in 276 U.S. 536, 48 S.Ct. 340, 72 L. Ed. 688. In that case our Court of Appeals said:

"It is to be borne in mind that the officers of the defendant, in making the improvement, were not performing corporate functions of the defendant. They were exercising a special power vested in them with reference to local improvements, in which the city as a whole was not concerned. * * * In all the transactions here involved they were but instrumentalities for originating, carrying out, and paying for the expense of local improvements, the cost of which was assessable against the property benefited thereby. In this fact is an insuperable obstacle to the right of the plaintiff to recover herein, for the officers of the city were not acting on its behalf, and they had no authority to bind it by any act or failure to act in the premises.

"It is well settled that municipal corporations possess no inherent power to levy assessments for local improvements, and that their only authority to do so is to be found in legislative acts. 25 R.C.L. 88. And it is uniformly held that in collecting money to pay for special improvements, where there is no liability against the corporation, the corporation authorities do not

act as its representatives, but as special agents or instrumentalities to accomplish a public end."

In a well-considered case, Powell v. City of Ada (C.C.A.) 61 F.(2d) 283, 288, Circuit Judge McDermott of the Tenth Circuit, after reviewing many decisions, including City of New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96, which is strongly relied on by complainant in the suits at bar, observed that each case, of, course, depends upon questions of the terms of the bond involved, and the state statute under which it is issued, and stated, in the determination of a situation not dissimilar to that which we are considering: "In the case at bar, there is no contention that the right to re-assess the cost of the improvement against the abutting property subject to assessment has been lost. The appellant, by his demand on the city, asserts that the right exists. The city, by its tardy compliance, agrees. It is our conclusion, under these facts, that appellant cannot now maintain an action for damages against the city. Where the statute confers the power to re-assess, where there is no claim that that power has been lost, a holder of special improvement bonds should first proceed to compel the city officials to do their duty. The appellant's lien extends only to property in the improvement district; he does not have a lien on all the property in the city. The rule contended for by appellant would enable city officials, by mere neglect or a simple refusal to proceed, to convert a special improvement bond into a general obligation of the city, and to compel property owners who have paid for paving abutting their property, to pay also for that abutting the property of others."

See, also, Blanchar v. City of Casper (C.C.A.10) 81 F.(2d) 452, and recently in Hammond v. City of Burbank, supra, the California Supreme Court has said, as to the very bonds that are in suit here, that they "are in no sense general obligations of the city," and that "the city itself is not obligated to pay the delinquent interest and principal on the bonds."

The same state court of last resort, in Kerr Glass Manufacturing Corporation v. City of San Buenaventura, 62 P.(2d) 583 in a decision filed November 19, 1936, stated regarding the liability of the city for the payment of street improvement bonds under the Improvement Bond Act involved in this suit: "That the land in the district is the sole source of payment for the cost of the improvement and that the obligation

of the municipality is limited merely to creating a revolving fund by certain authorized advances to the bond redemption fund."

This is a succinct and accurate statement of the scope of liability that the act under consideration imposes on the municipality.

The basis of the contention that the city is generally obligated to pay and discharge delinquencies in the principal and interest of its bonds is the language employed by the Legislature in section 12 of the act (as amended by St. 1923, p. 304). If this section is read alone and without regard to other important and necessary features of the legislative scheme that the act as a whole provides for and makes effective, there could be no doubt of the soundness of this contention, but such a method of statutory construction is improper. The act must be considered and applied in all of its parts, and each section must be reconciled with the others and be made effective if possible.

Section 12 in its material aspects, after specifying when the unpaid assessments that secure the payment of bonds shall be payable, reads:

"Upon default in payment, the lands securing such installments and assessments shall be sold in the same manner in which real property in such city is sold, for the nonpayment of general municipal taxes, and be subject to redemption within one year from date of sale in the same manner as such real property is redeemed from such delinquent sale, and upon failure of such redemption shall in like manner pass to the purchaser. The city may be the purchaser at any delinquent sale in like manner in which it becomes or may become the purchaser of property sold for nonpayment of the general municipal property tax, and in the event of its so becoming the purchaser shall pay and transfer into said redemption fund the amount of the delinquent assessment and of the delinquent interest thereon upon which said sale is made. In cases where the municipal property tax is collected by county or city and county officials and sales for nonpayment of such taxes are made to the state, the state shall be the purchaser at any such sale hereunder, but shall hold the title acquired at such sale upon behalf of the city and shall account to the city for any moneys received upon redemption or from the sale of such property, the city for the purposes of this act being deemed the real purchaser. In other cases

where under the law the city is not always the purchaser at sales for delinquent municipal taxes, the city shall become such purchaser at any delinquent sale hereunder where there is no other purchaser. In the event of there being no available funds in the treasury with which to make such payment, the tax collector shall delay the entry of the certificate of sale until such funds are available, making demand in the meantime upon the city council that a suitable amount be included in the next tax levy for the purpose of providing funds with which to make such payment; provided, however, that the period of redemption from such tax sale shall not be extended thereby nor the rights or privileges of the property owner be thereby in any wise affected. In the event of such purchase being made by the city and of any succeeding instalment of such assessment or of such interest not being paid in any future year, the property shall not be sold unless there has previously been a redemption from such sale or unless under the law it is then being sold for delinquent taxes. The city shall nevertheless, unless a resale has been made by it, from time to time when due pay and transfer into said redemption fund the amount of any such future delinquent assessment and interest pending redemption, and no redemption shall be made until any such subsequent payments, with interest and penalties, shall also be paid. The purchaser, whether at tax collector's sale or at resale by the city in the event of the city having become the purchaser, or at foreclosure sale by order of court, shall take the property subject to all unpaid instalments, interest and penalties under the same proceeding and to all public improvement assessments which may have priority thereover."

From the above-quoted part of the act it appears that three things shall take place upon default in payment of the principal or interest of the bonds at their respective due dates: (1) The lands securing the installments of principal and interest shall be sold as real property is sold for nonpayment of general taxes in California, and, if no other purchaser buys at the sale, the city shall at such sale buy in the property. (2) In that event, if the city has "available funds" in the city treasury with which to do so, it must transfer sufficient of such funds into the bond redemption funds that will satisfy and discharge the delinquencies that constitute the purchase price at the sale, and if after that sale there has been

no redemption therefrom or resale of the real property by the city which reimburses the city, although additional sales for bond delinquencies are prohibited, nevertheless the city must further transfer enough "available funds" thereof into the bond redemption funds to pay recurring delinquencies on the bonds. (3) If upon delinquencies and the sales of the property to the city there are insufficient "available funds" in the treasury to pay the purchase price at the sale or the subsequent unpaid assessments, the city shall by a tax levy upon all the taxable property in the city endeavor to supply the money necessary to discharge the delinquencies.

As has been stated, if there were no other parts and co-ordinating provisions of the act prescribing the municipality's duties respecting the bonds upon the occurrence of delinquencies therein, the general liability of the city to discharge the obligations of the bonds would be present, but there are limitations upon the power of the city to impose such a burden upon all taxable property within the city, which is the clear and inevitable result of imposing general liability upon the city to pay the bonds.

Section 16(a) that appears in the act (St.1915, p. 1449, as amended by St.1921, p. 230) under a subtitle, "Special Tax to Protect City," reads, as far as material to the present consideration, as follows: "The city counsel may, and in the event of demand by the tax collector therefor as provided in section twelve hereof must, at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal purposes, levy a special tax upon the taxable property in the city for the purpose of paying for the lands purchased or to be purchased at such tax sales, but not to exceed for each local improvement ten cents on each one hundred dollars of assessable property."

This restriction upon the city's power to tax in relation to the bonds in suit removes any tenable claim that, except as an aid to the purchase of lands bought in at the initial tax sale, and then only to an annual 10-cent limit, there is no authority to impose taxes to feed the redemption funds or to pay any delinquencies of the bonds. In view of the express limitations in section 16(a), the only way in which the broad taxing provisions which at first blush seem operative under section 12 can be made effective is by implication, and it is settled that a tax must be based upon an

express statutory authority, and that all doubts will be resolved against the taxing power. American Co. v. City of Lakeport, 220 Cal. 548, 554, 32 P.(2d) 622; Hammond v. City of Burbank (Cal.Sup.) 59 P. (2d) 495, 499.

■ The city and its officers contend that the tax sales conducted by the official of Los Angeles County are invalid, and as a result thereof the city was and is not required to supply any funds to pay for the purchase price of property sold at tax sales.

We think there are serious questions under the evidence as to the validity of the tax sales, in view of applicable provisions in the Political Code of California, §§ 3764, 3771, 3771a, 3785, 3817, and 3897, and the decisions of California appellate courts discountenancing the method of conducting tax sales without segregating the various elements of delinquencies that operate to bring about the tax sale. Stege v. Richmond, 194 Cal. 305, 228 P. 461; Cordano v. Kelsey, 28 Cal.App. 9, 151 P. 391, 398. See, also, State v. Cole, 43 Wyo. 209, 299 P. 1040.

The evidence shows that the county tax collector published only one notice of sale and held but one sale, at which there was no segregation made in the amount for which the property was sold, as between the bond tax shown for the Grinnell Drive street improvement and the road tax, flood control tax, municipal tax, City of Burbank, and general state and county taxes. The items were consolidated, and the sale made for a "lump sum."

This was an irregularity, but not one that the city can take advantage of in this suit. The county tax collector, with respect to the tax sales relating to the delinquent street assessments, was acting for and as the agent for the city, and his failure to pursue regularly his duties relating to segregating the items of deliquency in making the tax sale is chargeable to the city and cannot be set up by the city to defeat the rights of innocent bondholders. Moreover, in complaints filed by the city in the state court to foreclose liens upon the property that had been assessed for the purpose of feeding the redemption fund for the bonds, pursuant to section 11(c) of the Improvement Bond Act of 1915, there is an express allegation by the city that the tax sales were by its agents duly and regularly made. These facts and circumstances preclude the city from claiming in this suit that the tax sales are invalid.

If the only right on the part of the city to tax the entire city to pay or assist in paying the purchase price chargeable to the city by reason of its having bought in the property at the tax sale is that conferred by section 16(a), then, except for such monetary returns as the city may receive from foreclosure sale proceedings under section 11(c), it is only from "available funds in the treasury" that the city must directly discharge the bonded indebtedness.

■ It is unquestionably the duty of the city as statutory trustee of the bond redemption fund to meet defaulted obligations of the bonds by applying all "available funds" in its treasury to the payment of interest and principal of delinquencies on the bonds. The primary liability of the city is upon its statutory contract to create a fund, and undoubtedly, if there is any surplus at the end of a fiscal year over that required for all lawful municipal obligations, such surplus constitutes "available funds" which must be applied to the bond redemption fund and of which bondholders can compel a transfer to that fund by mandamus proceedings. Shepard v. Tulare Irrigation District (C.C.) 94 F. 1; Hammond v. City of Burbank, supra.

■ But the power of the United States District Court to issue a writ of mandamus is limited. It may not issue such writ originally, but only as auxiliary or ancillary in those cases is which it may be necessary to employ the writ in aid of its jurisdiction in a case already pending. Covington & Cincinnati Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Barber v. Hetfield (C.C.A.9) 4 F.(2d) 245; Rosenbaum v. Board of Supervisors (C.C.) 28 F. 223; Id., 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743; Shepard v. Tulare Irrigation District, supra. The primary inquiry, therefore, is whether there has been proof that there are "available funds" in the city treasury. If there be such "available funds," they may be subjected to the bondholders' claims by the court issuing the writ, unless some equitable principle should stay the issuance of the writ in the instant suit.

■ The burden of proof that at the several due dates of principal and interest on the bonds there were "available funds" in the treasury has not been sustained. All that has been shown is that at the end of each fiscal year since 1925–1926 certain credit balances of the city's funds existed in the bank in which the money of the municipality was deposited.

Even if it be admitted that at any period these bank balances were sufficient in amount to pay bond delinquencies, the availability of such balances to purchase property sold at delinquent tax sales or for subsequent delinquencies is by no means sufficiently shown thereby, because it clearly appeared that outstanding obligations of the city had not been considered in such balances, and the amount of incurred municipal indebtedness that was unpaid is not shown by the record. Under such circumstances there has been no proof that at due dates there were "available funds" in the city treasury with which to make payment of bond delinquencies. Higgins v. San Diego, 131 Cal. 294, 63 P. 470; Hull v. Ames, 26 Wash. 272, 66 P. 391, 90 Am. St.Rep. 743. The entity that is impressed with the trust is "available funds" in the city treasury, and until such entity is shown to exist no city moneys are allocatable to bond payments.

■ In connection with the question as to whether the mere proof of bank balances of municipal funds establishes "available funds," it is to be noted that the rule in California in respect to such a situation is that, in the absence of proof to the contrary, it must be assumed that moneys collected for any fiscal year are expended in payment of municipal demands which accrued during the year. Stuart Arms Co. v. City and County of San Francisco, 203 Cal. 150, 263 P. 218.

■ The complainant, recognizing the meagerness of its showing of "available funds" in any year since the first delinquencies in the fiscal year 1925–1926, suggests the equity of a further reference to the end that the existence of such funds may be later established. We believe that such course is unwarranted and, if taken, would prove ineffectual under the doctrine of laches. Hammond v. City of Burbank, supra. Although complainant now contends that each year since the first delinquencies in the bond account the city has had "available funds" that should have been transferred, it took no action in the courts to compel such transfer until the earliest of these consolidated suits was commenced in September of 1931, and it is also clear from the evidence that at no time prior to the month of October, 1929, did the complainant or any intervener make any demand that the municipal authorities or agents levy any tax or transfer any "available funds" into the redemption funds to pay delinquencies

on the bonds. This delay is inexcusable, and creates a barrier to complainant's present contention.

It has undoubtedly operated to affect the city and its taxpayers injuriously, because, if there has been a surplus in any of the prior years, such surplus was consumed in later years for other municipal purposes, and presumably the surplus was considered in fixing tax rates for succeeding years. The general taxpayers of the city should not at this time be additionally burdened to restore surpluses of past years. Such would be the necessary result if complainant's contention were sustained.

■ There is a misapplication of moneys in the bond redemption fund for which the city is liable and for which it must account to the complainant and the interveners in this suit. It was shown that interest that had been paid by the bank on deposits in the bond account, and penalties that were exacted from property owners because of delinquent payments, were diverted into general city funds and withdrawn and disbursed in payment of general municipal obligations. This was a clear invasion and misappropriation of trust funds by the trustee thereof without the knowledge, consent, or acquiescence of the beneficiaries, and all such money must be returned to the bond redemption fund. The mere fact that money received by the city officials as payments on account of the bonds was by such public officers deposited in one bank account that also included other city funds does not convert such bond payments or any part thereof or increment thereto into general city funds and thereby permit the city to take or use the interest that is paid on such trust fund deposits on the theory that certain statutes of California provide that interest on all deposits of public money by city officials belong to the municipality represented by the officer making the deposit. Such statutes do not apply to trust funds of the type designated in the Improvement Bond Act of 1915.

It will probably be unnecessary to make further examination or audit of the city records and bank accounts to ascertain the accurate amount of such trust funds that have been improperly diverted. The record shows it to have been $5,977.86 to April 10, 1933.

If this amount is not a complete statement of all interest and penalties that have been received and diverted by the city from the redemption fund, and the correct

amount cannot be agreed to by the litigants, the complainant and interveners will be entitled to a reference to a special master who will be authorized and empowered to take plenary evidence and state the account in a report to the court.

■ There is no merit in the defendants' contention that as a prerequisite to this suit in equity there must have been a claim filed with the city council of Burbank.

The requirement of filing claims against the city is found in the freeholders' charter of the City of Burbank, that was not effective until 1927, which was subsequent to the contractual engagements and the issuance of the bonds that are here involved, and in no way affects the rights of complainant or interveners in this suit. Gamewell Fire Alarm Co. v. Mayor, etc., of New York (C.C.) 31 F. 312; Mercantile Trust Co. v. Tennessee R. Co. (C.C.A.) 294 F. 483, 488.

■ In my opinion, no liability to complainant or interveners has attached in this suit by reason of the failure of the county tax collector to make demand upon the city council for levy of special tax as provided in sections 12 and 16(a) of the act. This omission recurred each year from the inception of delinquencies in 1927 until the fiscal year 1932, when the duty was discharged; and it has been discharged for each succeeding year. A bondholder, from the period of first delinquencies, at the end of any fiscal year could have enforced his right to require the tax collector to make the demand and also to require the council to levy the tax. He should not in equity be permitted to lie dormant in this respect for more than two years and then, when a general economic depression and real estate inactivity appears, take action to require the tax collection agencies of the city to function. Such conduct is tantamount to laches under the facts and circumstances brought out in this suit.

It is also to be noted that, upon the ordering of the foreclosure suits pursuant to section 11(c) of the act, that will be mentioned presently, the tax collector is by the statute discharged from any liability for the amount of any delinquent assessments, and exonerated from any further duty in regard thereto.

■ The complainant, conceding its inability to sustain any general recourse against the city ex contractu, because of debt limitation prohibitions in article 11, § 18, of the State Constitution of California, bases its demand for a general judgment against the city upon a novel theory of tort liability of the municipality.

We think that under the evidence and the authorities no tort liability has been established against the City of Burbank.

There has been no refusal or disablement by the city in creating an assessment district or fund. To the contrary, the assessments have been regularly laid as the statute requires, and no affirmative action has been taken to prevent payment of the assessments at any time or to impair or destroy liens that exist by reason of nonpayment of assessments. The liens upon the property benefited are extant and enforceable. If for any reason the assessments are void, the right to make valid reassessments remained secure for the bondholders. In these respects the situation is unlike those under consideration in City of New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96, and other decisions that discuss the question of bad faith or repudiation by the city authorities of the municipal contractual obligations. Peake v. New Orleans, 139 U.S. 342, 11 S.Ct. 541, 35 L.Ed. 131; Moore v. Nampa, supra.

All of the failures or omissions that have been shown in regard to the payment of the principal and interest of the bonds in suit are not those of the city but of the officers and agents of the city respecting special duties that they should have performed under the terms of the Improvement Bond Act of 1915 relating to governmental action, and it is well settled in California that a city is not liable for the misconduct of its officers when acting in a governmental capacity. Fox v. City of Pasadena, (C.C.A.9) 78 F.(2d) 948, 950, and cases cited therein.

Mention has been made earlier in this memorandum of the methods employed by the officials and agents of the City of Burbank in keeping all moneys received from the special assessments for the street improvement that concern the bonds in suit in one bank account. All city funds were deposited in three bank accounts. There were transfers of items from one account to another. It is also shown by the record that, even as to the bond payment money (so-called) that was paid by redemptioners or transmitted by the county officials to the Burbank city officials in payment of assessments, such funds were not segregated as to series or otherwise in the bank or in the bank books and records. They were

kept in one consolidated or lump sum account. These methods were irregular and constitute a commingling of trust funds of a special type with those of other and different classifications. It also appears, however, that all money received in payment of the bonded indebtedness that is involved in this suit is intact and available either in the registry of this court or in the city treasury, and that the city has kept books and records from which the accurate amount of money that should have been allocated to each of the three series of bonds in suit can be ascertained, reached, and subjected to delivery to the respective bondholders who are entitled to such funds. Under these circumstances no injury or damage is shown to the bondholders, although the method used by the city officials is not to be commended or encouraged.

If for any reason such records or funds are not complete and available to the bondholders, a further accounting than that already made at the hearing of this consolidated suit will be ordered, as well as effective process to accomplish it, and jurisdiction will be retained by this court for such purpose.

■ The last questions that it is considered necessary to discuss in this memorandum on the main issues in the suit are the reasons for and effect of the city's delay in commencing foreclosure actions as authorized by section 11(c) of the act.

The record shows that the city council, by resolution passed December 5, 1929, ordered foreclosure actions to be brought in the superior court to collect all delinquent assessments on property involved in series VI, VII, and VIII of the bonds here in suit, and to foreclose the liens that had attached to the real properties within the assessment district by reason of the defaults in payments on the bonds.

■ This course was taken by the city council at the request and express consent of the attorney for the complainant in this suit. After many conferences between the then city attorney of Burbank, the complainant's said counsel, and representatives of a title company, upon procedural and title questions incident to the foreclosures, which necessitated an unavoidable delay, 104 actions were commenced in the superior court in Los Angeles County during the period between May 26, 1930, and June 14, 1930. These suits were prosecuted with reasonable diligence, considering the complexities involved, and the failure to accomplish anything substantial for the bondholders as the result of this litigation was due to the depressed economic conditions that were generally prevalent and the dormancy in real estate activities in the region where the property involved in the foreclosure suits is located. The evidence shows that, although sales under foreclosure decrees were attempted, only one sale was made, and that for such a meager and unsatisfactory price that it was futile and detrimental to the interests of all having property interests, including the bondholders, to proceed with further sales. It was impossible to sell for anything like the amount of delinquent principal, interest and penalties. It is clear that sales at that time were unwarranted and not justified by the existing conditions, and, if made, would have added to the losses of the bondholders. There is some intimation by the complainant that the city itself should have bought in and paid for the property from its general city funds. Under our interpretation of the city's contractual and statutory obligations on the bonds, the municipality was not required to do so.

Section 11(c) provides that: "The city shall have the right to advance and pay county or other taxes wherever necessary to protect its interest in property against which there is a delinquent assessment. It may also at its discretion temporarily transfer moneys into the redemption fund from other funds in which such moneys are not immediately needed, the moneys so transferred to be used to pay sums due from such redemption fund and to be retransferred therefrom out of the first available receipts." St.1927, p. 889.

■ Assuming that those provisions of the act authorized the purchase at foreclosure sales, the exercise of such right is merely permissive and discretionary on the part of the city officials, and the existing times and conditions, as shown by the record, amply justified the city authorities in declining to use general city funds to purchase at the foreclosure sales. The act lodges discretion in the city council regarding the invoking of the cumulative remedy of foreclosure under section 11(c) thereof, and the court cannot find sufficient evidence in this record to decide now that the judgment of the council in the premises was wrong. It is to be further observed, in considering any delay on the part of the city in instituting foreclosure proceedings, that no adequate demand to foreclose was made by the complainant until the beginning of the

482

economic depression in 1929. The city commenced and prosecuted the suits with reasonable alacrity when all of the existing circumstances are considered.

 The remedy of foreclosure with which the act of 1915 invests the city is by express terms in section 11(c) made a cumulative and not an alternate remedy that is to be employed, not solely for the benefit of the city, but as an aid and assistance to the city in discharging its duty to the bond-owners, to the end that the assessments may be collected and the bonds paid in the manner prescribed by the Improvement Bond Act of 1915. Any money that the city receives as the result of foreclosure actions, over and above authorized costs, and any advances that it may have made to the redemption fund from general city funds, is not city money, but belongs to the bondholders, and the city is trustee for them as to such money, and is to account accordingly. Such accounting is enforceable by an original proceeding for the writ of mandamus. This court has no jurisdiction to issue such writ originally, and, moreover, this extraordinary remedy is not available until the foreclosure suits that are pending in the state court result in sales, and until money is realized from such sales no remedy is available to the bondholders.

The collateral issue between the bond-owners holding bonds in series VI, VII, and VIII that is presented by interveners Wieczorek and Hammond in my opinion requires brief discussion, in the light of the clear evidence as to the permanent insolvency of the assessment district and the redemption fund, and because of the lack of an inexhaustible taxing power by the City of Burbank from which sufficient money may be raised to pay all delinquent bonds in full.

 The argument that before the fund that is subject to the obligations of the bonds can be declared insolvent the City of Burbank as such must also be found to be insolvent, in my opinion has no merit. The city is not generally liable or obligated to pay these bonds, and the wide discrepancy between the amounts due on the bonds and the available sources of feeding the redemption fund makes it reasonably certain that the entire bond obligation can never be met.

The result of this situation is nothing less than insolvency of all entities that can be legally utilized or employed to pay the outstanding bonds. The complainant and the intervener Wieczorek seem to have lost sight entirely of the circumstance that the value of their bonds depends upon the validity and worth of the assessments and that under the facts brought out in the suit the city's liability to feed the assessment fund is limited to the statutory methods prescribed in the Improvement Bond Act of 1915 as construed by this court in preceding parts of this opinion and by the Supreme Court of California in its decisions that have been cited herein. It is generally conceded that substantially all assessments that will be paid have been collected and that it is improbable that much will be realized from foreclosures. It thus appears that the only certain sources to which the bondowners may look for the payment of principal and interest of the bonds is the money now impounded and in the registry of court and such additional amounts as will come through the 10-cent tax levy. This is not a case where the city council has the right to levy a tax that is sufficient to pay the bonds. It is a case where the statute confers upon the city only a limited power to levy taxes, irrespective of whether or not the money so raised will pay the bonds. This situation removes any priority of preferential status that otherwise would inure to bondowners of earlier issues or maturities over those whose bonds are later in point of time and maturity.

Each bond of series VI, VII, and VIII contains the following: "This bond will continue to bear interest after maturity at the rate above stated;" (7% per annum) "provided it is presented at maturity and payment thereof is refused upon the sole ground that there is not sufficient moneys in said redemption fund with which to pay same."

It is conceded by all suitors that all of the bonds in suit except series VIII have matured, and the pleadings also allege without conflict that all bonds involved that have matured have been duly presented at maturity for payment and that payment has been refused upon the sole ground that there is not sufficient moneys in the redemption fund with which to pay all of the bonds.

Earlier in this opinion attention has been directed to the aggregate principal delinquencies as of May 13, 1935, in the three series of bonds in suit, amounting to approximately $388,700. The interest at the rate of 7 per cent. per annum that has accumulated for six years is also de-

linquent. This makes a present total delinquency of more than $550,000. The record shows that there is now available in the redemption fund approximately $100,000, which, when applied to reduce the bond indebtedness, leaves an unpaid balance of about $450,000. The assessed value of all nonoperative property in the City of Burbank has ranged from $16,897,890 in the fiscal year 1934–1935 to $27,469,415 in the fiscal year 1929–1930, and, if the present period is taken as a basis for estimating the maximum amount that could be raised under the tax limitation of 10 cents on each $100 of assessable value, pursuant to the Improvement Bond Act of 1915, there would be a yearly possible yield of about $17,000, which would be insufficient to pay the interest alone, which would amount to approximately $27,000 annually; and, if the highest assessed valuation of nonoperative property in the record history of the city is taken as a basis of estimating the maximum return from the special tax authorized under the act, the amount realizable would be just about sufficient to pay the annual interest and leave the principal, if reduced at all, so large that the long time required for its payment, if no statute of limitations or other event operated to bar collection by taxation, would present an impractical, dilatory, and uncertain result. We believe that it is highly improbable that the special tax levy will ever be more than sufficient to pay the interest on the bonds in suit.

There is no longer any ground upon which to argue that the special tax authorizations of the act permit the 10-cent levy to be made as to each series of bonds, nor can the city in any year pyramid or cumulate the levies, because the duty of the city officials and agents to make levies in past years has been refused or neglected by them. The sole power and duty of the city is to levy one 10-cent limit special tax annually for the specific purpose of aiding in the purchase price at the initial tax sale. The entire work that was done under the ordinance of intention and for payment of which series VI and VII of bonds were issued constituted but one local improvement, and only one 10-cent levy for an improvement can be made yearly. Hammond v. City of Burbank, supra.

Inasmuch as the redemption fund is insolvent, and inasmuch as that fund cannot, under applicable law, be replenished by a general or inexhaustible taxing power, the money in the fund and that may be added thereto constitutes a trust fund both in fact and under the express provisions of the act, and, being insufficient to pay all bondholders in the three series in full, should be prorated among the owners in the respective series VI, VII, and VIII under the equitable doctrine of equality in the distribution of the funds of an insolvent debtor.

This is the view taken by the California Supreme Court in its latest interpretation and exposition of the Improvement Bond Act of 1915 in Kerr Glass Manufacturing Corporation v. City of San Buenaventura, supra. We think this decision correctly states the law, and that this court should not adopt a contrary construction.

I conclude this memorandum by summarizing the decision in this consolidated suit as follows:

Neither the complainant nor any intervener is entitled to a general judgment against the City of Burbank for the full amount of the principal and interest of their bonds respectively, but complainant and interveners are respectively entitled to a decree against defendants for an accounting and payment of all money and funds collected, deposited, or impounded by reason of the issuance and ownership of any of the bonds in suit. The account and payment to include any and all interest or penalties that have been or are diverted as stated in this memorandum.

The distribution of all funds and moneys hereby ordered is to be made equally and pro rata between all bondholders separately in the respective series, without priority or preference to any such bondholder, first, to the payment of matured coupons and accrued interest, and thereafter, if any surplus remains, to the equal and pro rata payment of principal until the entire fund is exhausted.

Solicitors for complainant, interveners, and defendants will collaborate and prepare findings of fact, conclusions of law, and decree, pursuant to the views expressed in this memorandum of decision and as thus limited in accordance with the prayer in the petition of Paul B. Hammond et al., in intervention, on file herein, without costs or attorneys' fees to any party or intervener.