STATE, EX REL. GERMAN INVESTMENT AND SECURITIES COMPANY *v.* CITY OF INDIANAPOLIS.

[No. 23,354. Filed May 27, 1919. Rehearing denied December 19, 1919.]

1. MANDAMUS.—*Remedy.—Scope.*—Mandamus will be issued only in cases where the facts show a clear legal right on the relator's part to the relief sought and a clear legal duty resting on the defendants to perform the thing demanded. p. 691.

2. MUNICIPAL CORPORATIONS. — *Street Improvements. — Contractor.—Assignment of Assessments.—Rights of Assignee.*— The assignment by the contractor of assessments to be made on the completion of a street improvement, and its acceptance by the city, conferred on the assignee an equitable interest therein, but the interest acquired thereunder was no different than that of the contractor, in the absence of the assignment, and was therefore subject to any defenses which might exist against the contractor. p. 691.

3. MUNICIPAL CORPORATIONS.—*Street Improvements.—Final Assessments.*—In view of §8711 Burns 1914, Acts 1909 p. 412, neither the contractor nor the assignee of assessments for street improvements can require the board of public works of the city to make final assessments to pay for the work, unless such work has been finally accepted as completed in accordance with the contract. p. 692.

4. MUNICIPAL CORPORATIONS.—*Street Improvements.—Acceptance.—Rescission of Order.*—Though the board of public works, by approval of the report of the city engineer, entered an order accepting street improvements as completed according to the

contract, the board had the right to rescind the order on the discovery that the work had not been properly constructed and was of no benefit to property affected, and it was the duty of the board to exercise that power, unless the rights of innocent parties had intervened so as to make such course inequitable. pp. 692, 695.

5. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Inspection.* —*Waiver of Defects.*—Though the work and operations of the contractor for street improvements, and the kind and character of the material used, were supervised as the work progressed by the engineering department of the city, such facts cannot be held as a waiver by the city of its right to reject the work for failure to construct it as required by the contract, the rights and duties of the city being purely statutory. pp. 693, 695.

6. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Authority to Make Assessments.*—A municipality has no power to make assessments for street improvements without statutory authority. pp. 693, 694.

7. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Acts of Officers.*—*Payment of Contract Price.*—*City's Liability.*—In awarding contracts and performing other duties imposed by the statute authorizing such proceedings, the municipal officers do not act in behalf of the municipality in such a way as to create any liability against it under the contract, since the contract price can be paid only from special assessments made under statutory authority, and the contractor is bound by the statutory provisions which authorize and govern the contract and provide for its acceptance. p. 694.

8. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Compliance with Contract.*—*Acceptance.*—The decision of the board of public works as to whether street improvements have been made in substantial compliance with the statute is *quasi*-judicial in its nature and when made is conclusive, in the absence of fraud, on all persons affected thereby, and may be set aside only in a direct proceeding for that purpose on the ground of fraud. p. 694.

9. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assignment of Assessments.*—*Assignee's Rights.*—Where a contractor for street improvements assigned assessments before the board of public works had taken any action as to accepting or rejecting the work done under the contract, the board, in rescinding an order of acceptance thereafter made, did not prejudice the rights of the assignee, since the assignee's position was no more advantageous than that of the contractor had no assignment been made. p. 696.

10.  MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Completion of Contract.*—*Authority of Municipality.*—An assignee of assessments for street improvements is not in position to complain of the refusal of the board of public works, after the rejection thereof for failure to comply with the contract, to take steps, by contract or otherwise, to complete the work in accordance with the contract, the city being under no duty to the contractor to cause the completion of the work.  p.697.

From Marion Superior Court; *Linn D. Hay,* Judge.

Mandamus by the State of Indiana, on the relation of the German Investment and Securities Company, against the city of Indianapolis and others. From a judgment for the defendants, the relator appeals. *Affirmed.*

*Florea & Seidensticker* and *Harvey & Austill* for appellant.

*Samuel Ashby, Thomas D. Stevenson,* and *Harry E. Yockey,* for appellees.

LAIRY, C. J.—This is an appeal from a judgment in an action of mandamus brought by appellant against the city of Indianapolis and Joseph A. Rink, George B. Gaston and Ernest L. Ziegler, as members of the board of public works of said city. The purpose of the action was to compel appellees by mandate to take such steps as would lead to the adoption of a final assessment roll fixing a lien on property abutting on Thirty-sixth street in said city, between the east line of Pennsylvania street and the west line of Central avenue, to pay the cost of construction of an improvement of that portion of the street made under a contract between the city and the Bitu-Mass Paving Company. The interest of relator in the assessments to be made was acquired by an agreement by which the Bitu-Mass Paving Company, as contractor, assigned to it the assessment roll and all assessments to be made therein arising from the construction

of the improvement mentioned, to be held by the relator as collateral security for the repayment of a certain sum of money loaned by relator to the contractor and used by it in paying for labor employed and material used in the construction of said improvement. The case was tried by the court without the intervention of a jury. On proper request the court made a special finding of facts and pronounced its conclusions of law thereon in favor of appellee. Judgment was rendered on the finding in conformity with the conclusions of law. The only error assigned on appeal is that the trial court erred in its conclusions of law on the facts found.

The special finding shows that on July 11, 1910, the city of Indianapolis entered into a contract with the Bitu-Mass Paving Company, by the terms of which that company was to improve that part of Thirty-sixth street between the east line of Pennsylvania street and the west line of Central avenue, except the crossing of Washington boulevard, the improvement to consist of a bitu-mass roadway, with curbs and other incidental work according to certain plans adopted by the city. The proceedings under which the contract was let were instituted and conducted under the provisions of the statute of the state with reference to the improvement of streets by special assessments on real estate benefited by such improvements, and was originated by the board of public works of said city on May 20, 1910, by the adoption of a declaratory resolution providing for said improvement. It further appears from the finding that the contractor executed and filed a bond as provided by statute, with the Fidelity and Deposit Company as surety thereon, which bond was in the penal sum of $4,120, conditioned for the full and faithful performance of said contract by the contractor. This bond was accepted and approved by the proper officers of the city. The finding sets out at length the conditions of

the bond, as well as certain provisions of the contract, the performance of which the bond was given to secure. It thus appears that the work to be done was to be completed according to the terms of the contract on or before September 10, 1910, and that the contractor was to pay all moneys due to subcontractors, or to persons furnishing material or labor for the prosecution of the work to be done under the contract. The court further found that the contractor entered on the execution of the work under the direction and supervision of the engineering department of the city, and that such work was so prosecuted until the contractor claimed that it was completed in accordance with the contract. As the work progressed the kind and character of the material used was inspected by the engineering department of the city, and on November 4, 1910, the civil engineer of said city reported to the board of public works that the work was completed according to the terms of the contract, and recommended that it be accepted by said board. On the same day the board of public works entered an order approving the report of the civil engineer, accepting the work, and directing the chief clerk of the assessment bureau to prepare the primary assessment roll for said improvement in accordance with the law. Thereafter the primary assessment roll was so made and approved by the board of public works, and the assessments so made aggregated the full amount of the contract price. The board fixed November 16, 1910, as the date on which the owners of property affected by the assessments for such improvement might be heard as to any objections to, or remonstrance against, such assessment, and the notice provided by statute was published. The hearing was not finished on the day fixed, but was continued from time to time; and on December 18, 1911, the board of public

works entered an order rescinding all action previously taken and setting aside the acceptance of the work and the approval of the primary assessment roll, after which time it refused to further consider the making of a final assessment to pay the cost and expenses of such improvement.

Some parts of the roadway, as shown by the finding, were constructed of material not properly mixed or prepared, which parts crumbled away, and as a result holes of considerable size and depth were worn in the street, while other parts of the street remained in good condition; but the court finds that, as a whole, the improvement was no benefit to the abutting property. As the finding shows, the portion of the street covered by the work was opened to public use and travel on November 4, 1910, and was used by the public continuously, and was being so used at the time of the trial. During the time it was being so used the city on different occasions repaired worn places in the roadway by filling them with cinders and with asphaltum. The court finds that, before the commencement of the action, relator repeatedly demanded of the city that it take such steps as were necessary to cause said roadway to be made to comply with the contract, and that it do such things as would result in the making and confirmation of a final assessment roll to pay the cost of the improvement, but that the city, about thirty days before the commencement of the action, finally refused to take any such steps.

Relator, as shown by the finding, took an assignment from the contractor of all its beneficial interest in and to all assessments to be made by the city on account of work done under the contract and of the proceeds in cash or bonds to be collected and received by virtue of such assessments. This assignment was made October 8, 1910, for the purpose of securing to relator the repayment of money to be loaned to the contractor to be used

for paying the costs for the labor and material which entered into the construction of the work. On October 12, 1910, relator loaned said contractor in consideration of such security the sum of $6,000, and on November 3, 1910, relator loaned the contractor on the strength of the same security the further sum of $500, all of which was to bear interest at the rate of eight per cent. The sums so loaned to the contractor were expended in paying for labor and material used in the construction of the work. Shortly after November 4, 1910, the contracting company became insolvent and so remained at the time of the trial, and relator has no security for the repayment of the money so loaned, other than the rights and interests acquired by said assignment, and has no other means of collecting the amounts so due it from the contractor, although no part of the money so owing has ever been paid. The court also finds that, before taking the assignment and making the loan, the relator made inquiry of the engineering department of the city as to the completion of the work, and was informed by that department that the work had been completed according to the contract, and that the acceptance of the work would be recommended by the department to the board of public works.

It is well settled that a writ of mandate will be issued only in cases where the facts show a clear legal right on the part of relator to the relief sought, and a clear legal duty resting on the defendants to do and perform the thing demanded. *State, ex rel.* v. *Graham* (1914), 183 Ind. 53, 108 N. E. 111; *Owen County Council* v. *State, ex rel.* (1911), 175 Ind. 610, 95 N. E. 253.

The assignment by the contractor of the assessments to be made on the completion of the street improvement, and its acceptance by the city, conferred on the assignee an equitable interest therein, which

was subject to any defenses which might exist against his assignor. *Lynip* v. *Alturas School Dist.* (1914), 24 Cal. App. 426, 141 Pac. 835; *Chambers* v. *Lancaster* (1899), 160 N. Y. 342, 54 N. E. 707; *Summers* v. *Hutson* (1874), 48 Ind. 228. The interest so acquired is not different in kind or superior in character to the rights which the assignor would have possessed in case no such assignment had been made. Nothing can be claimed under the assignment until conditions have arisen which would have enabled the contractor to assert a claim successfully in the absence of such assignment. *Aetna Trust, etc., Co.* v. *Nackenhorst* (1919), *ante* 621, 122 N. E. 421, 123 N. E. 453, 125 N. E. 213.

Under the statute the contractor has no right to have the work finally accepted until it is completed in accordance with the terms of the contract, and no 3. duty rests on the board of public works of a city to accept such a work until it is so completed. §8711 Burns 1914, Acts 1909 p. 412. Until the 4. work is completed and accepted, there is nothing upon which an assessment against the property affected by the work can be based, as the statute authorizes the making of such assessments only after the work has been finally accepted. It thus appears that relator had no right to require the board of public works of the city to make the final assessments to pay for the work, unless such work had been finally accepted. The special finding does not show that the work was finally accepted. While it appears from the finding that the board of public works made an order approving the report of the city engineers and accepting the work on November 4, 1910, and at that time opened the street to the use of the public, the finding also shows that the work was not properly constructed, and that, as a whole, it was of no benefit to the property affected. Upon discovering this fact, the board of public works

had a right to rescind its order accepting the improvement, which it did on December 18, 1911.   Under such a state of facts the board of public works had no authority under the law to make an assessment of benefits against the property affected.

Relator attempts to invoke the equitable doctrine of waiver, relying on the eighth finding as showing a state of facts constituting a waiver by the city of its right to reject the work after it was finished on account of material that had been inspected by the engineering department or of work that had been done to the approval of that department. The facts thus relied on are that the operations and work of the contractor, and the kind and character of the materials used in constructing the improvement, were supervised and inspected as the work progressed by the engineering department of the city.   The theory of the relator is that, by permitting defective material, or material that was not properly prepared and mixed, to be put into the work after inspecting the same and supervising the work by its engineering department, the city thereby misled the contractor into the belief that the material and work were substantially in accordance with the contract and were acceptable to the city.   It is asserted that it would be inequitable, and that it would work a great hardship on the contractor if the city, after the material had become a permanent part of the improvement, were to be permitted to assert that the material used or the work done did not conform to the contract, thus putting the contractor to the expense of removing the part of the work condemned and of reconstructing it with new material.   There is a line of cases which hold that, where it is the intention of the contracting parties, as evidenced by the contract, that the owner shall have a representative on the ground whose duty shall be to inspect material and oversee the

work as it progresses, and to reject unsatisfactory material or inefficient work at once, the owner will be held to have waived, in the absence of fraud or collusion, any such defects as his representative, acting under such arrangement, observed or could have discovered by reasonable inspection. *Board, etc.* v. *O'Conner* (1894), 137 Ind. 622, 35 N. E. 1006, 37 N. E. 16; *Schliess* v. *Grand Rapids* (1902), 131 Mich. 52, 90 N. W. 700; *Wildey* v. *Fractional School Dist.* (1872), 25 Mich. 419; *City Street Improvement Co.* v. *Marysville* (1909), 155 Cal. 419, 101 Pac. 308, 23 L. R. A. (N. S.) 317; *Laycock* v. *Moon* (1897), 97 Wis. 59, 72 N. W. 372; *Ashland Lime, etc., Co.* v. *Shores* (1899), 105 Wis. 122, 81 N. W. 136.

The cases cited show that the rule has been held to apply to work done under contracts awarded by individuals and by private corporations, and also to

6.  contracts awarded by municipal corporations in their corporate capacity for the construction of any work to be done at the general expense of the municipality; but the attention of the court has not been called to any case in which the rule has been applied to a local improvement to be paid for by assessments on property specially benefited. Such improvements are made and the assessments are imposed under special statutory authority, without which the municipality has no power to make assessments for such a purpose. *City of Bluffton* v. *Miller* (1904), 33 Ind. App. 521, 70 N. E. 989; *City of Fort Wayne* v. *Shoaff* (1886), 106 Ind. 66, 5 N. E. 403.

In awarding contracts and performing other duties imposed by the statute authorizing such proceedings, the municipal officers do not act in behalf of the

7.  municipality in such a way as to create any liability against it under the contract. The contract

8.  price of such an improvement can be paid only

from the proceeds of special assessments made under the authority of the statute, and the contractor is bound by the provisions of the statute which authorizes the contract, governs its execution, and provides for its acceptance. Under the statute, the city engineer had no power to accept the work done under the contract; that power was lodged in the board of public works, and it is the duty of that board to determine, before accepting the work, that it is completed in substantial accordance with the contract. The decision as to whether the work is in substantial accordance with the contract is *quasi*-judicial in its nature and when made is conclusive, in the absence of fraud, on all persons affected thereby. *Dawson* v. *Hipskind* (1909), 173 Ind. 216, 89 N. E. 863; *Town of Woodruff Place* v. *Gorman* (1912), 179 Ind. 1, 100 N. E. 296. Such a decision is immune from collateral attack, but it may be set aside by the court in a direct proceeding for that purpose based on fraud. *Alsmeier* v. *Adams* (1916), 62 Ind. App. 219, 105 N. E. 1033, 109 N. E. 58.

The board of public works is required to decide whether the work does or does not comply substantially with the terms of the contract. This must be
5. determined from a consideration of the facts showing the real character and condition of the improvement tendered for acceptance, unaffected by any considerations of waiver arising from the conduct of the engineers or inspectors who superintended the work. Such engineers have no authority to waive any substantial defects in material or workmanship, or to recognize any radical departure from the requirements of the contract.

It appears from the finding in this case that the defects were of such a substantial nature as to render the work absolutely worthless and of no benefit to the
4. property affected. If that fact had come to the

knowledge of the board at the time the work was tendered for acceptance, it would have been its duty to reject it; and the fact that an order of acceptance was entered on November 4, 1910, under a misapprehension as to the condition of the work, did not deprive the board of further power to act. If the true condition of the work was brought to its knowledge while engaged in hearing objections to assessments, it still had the power to set aside its former order of acceptance and to refuse to make any final assessments until the work was made to conform substantially to the contract, and it was the duty of the board to exercise that power, unless the rights of innocent parties had intervened so as to make such a course inequitable. The setting aside of an order of acceptance improvidently made works no injustice to the contractor in this case, and it does not appear that the delay in taking such action caused any loss to the relator or in any other way prejudiced its rights.

The relator accepted the assignment and parted with its money before the board of public works had taken any action as to accepting or rejecting the work 9. done under the contract. Therefore no claim can be made that the relator relied on the order of acceptance at the time of taking the assignment and making the loan, and that it was induced thereby to accept the security and make the loan when otherwise it would not have done so. Relator does not show that he was led by reliance on the order of acceptance to do anything which placed him in a more unfavorable position than he would have occupied in case the order had not been made. No question of estoppel is presented by the findings, and the relator stands in no more advantageous position than the contractor would have occupied in case no assignment had been made.

The relator is in no position to complain of the refusal of the board to take steps, by contract or otherwise,

to complete the work and make it conform to the
10. contract. The city was under no duty to the
contractor to cause the work to be completed.
*City of Auburn* v. *State, ex rel.* (1908), 170 Ind. 511, 83
N. E. 997, 84 N. E. 990.

The trial court did not err in its conclusions of law,
and the judgment is therefore affirmed.

Myers, J., dissents.　Harvey, J., not participating.

NOTE.—Reported in 123 N. E. 405.