## No. 15,077.

ALPHA CORPORATION ET AL. *v.* DENVER-GREELEY VALLEY
IRRIGATION DISTRICT ET AL.

(132 P. [2d] 448)

Decided December 7, 1942.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, Mr. ROBERT A. DICK, Mr. ROBERT M. GILBERT, for plaintiffs in error.

Mr. DAVID J. MILLER, Mr. REID WILLIAMS, Mr. J. DONOVAN STAPP, for defendants in error.

Mr. GEORGE A. EPPERSON, amicus curiae.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

This is a review of a decree of the district court of Weld county purporting to dissolve the Denver-Greeley Valley Irrigation District. The questions presented are purely ones of law as related to established uncontroverted facts. The district was created March 8, 1909 under chapter 113, S.L. 1905. Included in the district are 31,107 acres of land lying in Weld and Adams counties. April 5, 1909, the district authorized the issuance of $2,000,000 of bonds maturing in the years 1920 to 1929 inclusive, and bearing interest at the rate of six per cent per annum evidenced by semi-annual interest coupons. All these bonds were actually issued and outstanding prior to January 1, 1915. Tax assessments or levies in an amount in excess of the total face amount of all the bonds and interest coupons have been made on the lands included in the district. The levies for the bond interest coupons which matured in the years 1913 to 1919 inclusive, were made in the year 1936 in connection with a proceeding in the federal court. With such exception, all levies for bonds and interest were made during the years preceding the respective maturities of the bonds and coupons. Notwithstanding that all of such levies were so made in full, due to delinquencies in the payment of the tax, there are still outstanding and unpaid bonds of the district in the aggregate amount of $123,583.51; interest coupons aggregating $176,436.88 in face amount, and warrants totalling in excess of $38,000. Levies for the full face amount of these warrants also have been made in due course.

The district never has constructed an irrigation system but owns 3,480 shares of the stock of the Farmers Reservoir and Irrigation Company, one of the plaintiffs in error, which provides the source of the district water supply. The Farmers company maintains the facilities

for the delivery of the water evidenced by such stock to the landowners in the district, who, through assessment by the district, pay an annual operation and maintenance charge to the Farmers company for such delivery. The district also owns, or has an interest in, tax sale certificates issued to the counties of Weld and Adams or to the district, based upon delinquent taxes heretofore levied for the payment of bonds, interest and operation and maintenance assessments.

With affairs in this condition, a petition proposing the dissolution of the district, based upon sections 533 to 544 inclusive, chapter 90, '35 C.S.A., as amended by chapter 162, S.L. 1941 (§§535, 541 and 542, chapter 90, 1941 Cum. Supp. to '35 C.S.A.), signed by a majority of the electors and the owners of a majority of the acreage within the district, was filed with the district directors, May 1, 1941. In pursuance thereof the directors thereupon gave notice of an election in which was set forth the plan for dissolution determined upon by the directors. Of the 160 qualified persons in the district, 131 voted, the result being: 130 votes for, and 1 against, dissolution. Following the election, upon the petition of the defendants in error, Behrens, Blinn and Loloff, the district court of Weld county, strictly adhering to the procedural requirements of the statutes hereinabove cited and after a trial, entered the decree of dissolution here under review.

As the basis for permitting the dissolution, the district court, considering the statutes and decisions hereinafter to be mentioned, found that the proceeds from levies and assessments upon the real property within the district, constituted the sole fund out of which the bonds and bond interest might be paid and concluded that since all levies and assessments necessary to meet these obligations had been made, the payment of all the district indebtedness thereby legally had been secured and the debt contract of the district satisfied and executed, notwithstanding, as has been mentioned, because of de-

linquencies in the payment of the taxes assessed, a considerable number of bonds, bond interest coupons and warrants remained outstanding.

Consistently, the decree provided for the assignment by the county treasurers of Weld and Adams counties of tax sale certificates to the holders of outstanding bonds, bond coupons and warrants, and specified that the dissolution decree should not affect the validity of outstanding certificates or subsequent deeds issued thereunder. It was further decreed that the 3,480 shares of stock of the Farmers company owned by the district, and all of its other property except tax sale redemption money which was to be held in trust for the bond and warrant holders, should be the property of the landowners of the district and distributed to them ratably on an acreage basis as appurtenances to their land. The court nominated a Special Master to administer the decree and, in addition, upon the pleadings and prayer of a petition of intervention filed by defendants in error The Denver Joint Stock Land Bank of Denver, Opdyke, Born, Peterson and Pfief, landowners of the district, adjudged that all obligations of the district which had matured more than six years prior to the commencement of the dissolution proceedings, were subject to the bar of the statute of limitations (chapter 102, §1, '35 C.S.A.). The district court further found that the continued existence of the district would result in the imposition of unwarranted operating expense upon the landowners therein.

Of the parties as yet unidentified herein, plaintiff in error The Alpha Corporation is the owner of a large acreage in the district and also holds a considerable block of outstanding district bonds and interest coupons. Plaintiff in error Chesnut is the owner of certain outstanding interest coupons.

The questions with which we are here confronted were raised by appropriate pleadings and objections of the two plaintiffs in error last named and the Farmers com-

pany which, in addition to being subjected to the hazards of the validity of the decree by being required to transfer district water stock to the individual landowners, is also the owner of the greater part of the operation and maintenance warrants outstanding. All other parties, as well as amicus curiae, argue for the affirmance of the decree. For a proper understanding of the objections of plaintiffs in error, we deem it essential that the legislative enactments on the subject under consideration be reviewed.

The 1905 act, under which the bonds were issued, provided for the dissolution of irrigation districts by a vote of a majority of the resident freeholders, representing a majority of the number of acres of the irrigable land in the district, at a special election called by the board of directors, upon a petition of the landowners setting forth, "that all bills and claims of every nature whatsoever have been fully satisfied and paid." Before calling such an election the statute provides that the board "shall be satisfied that all claims and bills have been fully satisfied." If an election so held favored a dissolution, such was culminated by the board certifying the result to the county clerk of the respective counties in which the district was situate. S.L. 1905, c. 113, §§48, 49.

In 1915 a new statute, covering the procedure for dissolution of irrigation districts (S.L. 1915, c. 107, being sections 533 to 545 inclusive, chapter 90, '35 C.S.A.), was adopted. Notwithstanding that section 535, supra, as printed contains a proviso, here irrelevant, added by S.L. 1917, chapter 83, section 21 to section 3 of the 1915 act, we shall refer to it herein as if it contained the original matter only. The inception of the proceeding by petition and the election feature of the 1905 act in a modified form were preserved, but, additionally, if a majority of the votes were cast in favor of dissolution, the directors were required to petition the proper district court for a determination of the validity of the proceedings had and of the proposed plan for dissolu-

tion, notice of the judicial action to be given by publication to interested parties. Sections 534 to 537, supra. Section 542, supra (§10, 1915 act), is as follows: "No plan of liquidation shall be approved by the court which does not provide *for the ultimate payment or liquidation of all the indebtedness of the district and adequate security for the holders thereof.*" Section 535 (§3, 1915 act) provides that the election for dissolution could not be called without the assent of all the holders of valid indebtedness against the district unless the plan of dissolution shall contain a provision for the ultimate payment or liquidation of the claims of non-assenting holders of indebtedness. Inter alia, by chapter 162, S.L. 1941, sections 535, 541 and 542, supra (§§3, 9 and 10, 1915 act), were amended. To the requirements of section 535 (§3, 1915 act) that the plan of dissolution should make provision for the ultimate payment or liquidation of claims, the 1941 amendment added an alternative condition permitting dissolution when "all tax levies required by the laws of the State of Colorado for the payment of such indebtedness shall be made." By the amendment of section 542 (§10, 1915 act), the italicized portion of the section as quoted above was eliminated and, in effect, it was declared unnecessary as a condition to dissolution, for the district to pay, or include in the schedule of indebtedness, any debt or obligation of the district for the enforcement of which a suit is "barred by the laws of this State"; nor when all required levies had been made, to pay any debt except from such tax proceeds.

As we have mentioned hereinabove, the dissolution proceedings before us are grounded upon the laws of 1915 as amended by the 1941 act. Plaintiffs in error, stressing that the district was formed and the bonds issued under the 1905 act, argue that to permit the dissolution of the district without the payment of all outstanding indebtedness, as it is said the 1905 law requires, unconstitutionally impairs the obligations of the con-

tracts evidencing such indebtedness and as well that any statute which so authorizes is void as against the bond and interest coupon holders of the district herein involved.

In Colorado it is definitely settled that irrigation district bonds, bond interest and warrant liens are special assessment liens and not blanket liens, and that cumulative tax levies for the purpose of paying such irrigation district indebtedness cannot be made or enforced. *Interstate Trust Co. v. Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123; *Thomas v. Henrylyn Irr. Dist.*, 79 Colo. 636, 247 Pac. 1059; *Board of County Commissioners v. Heath*, 87 Colo. 204, 286 Pac. 107. See, also, *People ex rel. Rogers v. Letford*, 102 Colo. 284, 79 P. (2d) 274, and *Denver-Greeley Valley Irr. Dist. v. Mc-Neill*, 80 F. (2d) 929, 106 F. (2d) 288. In *Henrylyn Irr. Dist. v. Thomas*, 64 Colo. 413, 173 Pac. 541, we held that an action to recover a money judgment upon irrigation district bond interest coupons would not lie, since the irrigation district statute (1905) provided that the interest should be paid by revenue derived from annual assessments upon the real property of the district and that the remedy of the coupon holders was mandamus to compel proper levies. The basis of these decisions is well exemplified in the language of the opinion in *Interstate Trust Co. v. Montezuma Irr. Dist.*, *supra*, wherein we stated: "The liabilities of the district are a charge upon the land ratably, with the acre as the unit, on which basis assessments are determined according to benefits. Back of each dollar of debt stands, ratably, the irrigable land of the district, the extent of which has been carefully and exactly ascertained. The law provides the method whereby warrant holders [the rule applies to bonds, chapter 90, §399, '35 C.S.A.; *Tew v. Phillips*, 73 Colo. 408, 216 Pac. 525] may take the land itself, at tax sale, in lieu of warrants if they so desire. This is the letter of their contract and this is the remedy they must have understood was provided for them, in

the event of failure of payment of the warrants [or bonds, *Thomas v. Henrylyn Irr. Dist., supra*], when they assumed the relationship of creditor to the district."

As a perusal of the foregoing authorities will disclose, these principles apply with equal force to all existing irrigation districts, including those formed under the 1905 act. Since, as is uncontroverted in the instant case, all assessments required by law to have been made, have been levied, the district has fully met all duties and obligations imposed upon it by the bond and warrant contracts. It could not now, either voluntarily or by attempted compulsion, levy a tax to pay the deficiencies arising from tax delinquencies or to provide additional security therefor. The dissolution decree preserves the liens of the tax on the delinquent acreage and directs that proceeds arising from future tax redemptions shall go to the holders of the outstanding indebtedness. It is thus evident that previous to the institution of the dissolution proceedings, in so far as could be accomplished legally, "all claims" of the district were "fully satisfied and paid" (S.L. 1905), and that by maintaining the corpus the only fund or source to which the holders of district indebtedness ever could have had recourse for security or satisfaction, the decree provided the only plan lawfully available for "the ultimate payment or liquidation of all the indebtedness of the district and adequate security for the holders thereof." S.L. 1915, c. 107, §10 (Sec. 542, supra).

When it is considered that the obligation of a contract is the means provided by law for the enforcement of it (*Sturges v. Crowninshield*, 4 Wheat. 122, 197, 4 L. Ed. 529 [cited with approval in *Golden v. Schaul*, 105 Colo. 158, 95 P. (2d) 806]), it is clear that the obligation of none of the bond, interest coupon or warrant contracts herein involved, were impaired by the dissolution of the district. By reason of the fundamental limitations as to the source of payment of the indebtedness of existing irrigation districts, it also would seem certain that the

1915 and the 1941 dissolution statutes are purely remedial in character and deprive the holders of indebtedness of no remedy accorded by the 1905 act, so are not violative of the constitutional guaranty last mentioned.

In support of their position plaintiffs in error rely principally upon the case of *Michigan Trust Co. v. Otero Irrigation District,* 76 Colo. 441, 232 Pac. 919 (see, also, the companion case of *Dalton v. Otero Irrigation District,* 76 Colo. 438, 232 Pac. 922). Therein, at the instance of a creditor holding a federal court judgment based upon the creditor's ownership of bonds and coupons of the irrigation district involved, we reversed a decree of the district court allowing dissolution upon a plan proposed by the directors. As appears from the opinion and more fully from the record in that case, instead of preserving the outstanding tax sale certificates for the benefit of all the holders of outstanding indebtedness, as was done in the case at bar, the plan approved by the decree *turned over* the tax moneys in the hands of the county treasurer, as well as the outstanding tax sale certificates, to two of the creditors to the exclusion of all others, including the one seeking the review. This violation of the trust fund theory would have necessitated a reversal in any event; however, and in opposition to the views we have announced hereinabove, the opinion expressed that under the 1915 act the dissolution of an irrigation district which has an outstanding debt may not be decreed, unless and until its indebtedness is paid in money or adequate security for such payment acceptable to the creditors is provided and this notwithstanding that tax levies for the full face of the indebtedness already have been made. As appears from the opinion therein, this conclusion seemingly was based upon the following premises: (1) That the continuing obligation of the district on its bonds was akin to the liability of the maker of a promissory note; i.e., a general and continuing obligation to pay without reference to the source thereof; (2) that the

district, with dissolution denied, might continue to make cumulative annual levies of fifteen per cent of its indebtedness to meet the delinquencies in tax collections, as the statute permitted, and thus in time might liquidate its indebtedness, and, (3) that the property of the district, such as its irrigation system, might be subjected to execution under a judgment on bonds or coupons.

The first premise is entirely inconsistent with the special fund theory of *Interstate Trust Co. v. Montezuma Irrigation District, supra*, which has stood through the years as a guide-post to the respective rights and obligations of irrigation district creditors and landowners. The second premise was destroyed by the decision in *Board of County Commissioners v. Heath, supra*, wherein it was held that the "15% excess provision" of the statute referred to in the Otero case, did not apply to levies for bond principal and interest and that such cumulative levy could not be made for the payment of either. The fallacy of the third assumption is demonstrated by our holding in *Henrylyn Irrigation District v. Thomas, supra*, that an action would not lie to recover a money judgment on irrigation bond interest coupons. In the absence of such remedy it is manifest that no execution against district property possibly could be issued. The same ruling as to warrants was made in *Rio Grande Co. v. Orchard Mesa Irrigation District*, 64 Colo. 334, 171 Pac. 367. That the same restriction would apply in the case of bond principal is apparent. With the bases for the conclusion expressed in the opinion in the Otero cases so weakened by subsequent decisions of this court, and by precedents to which we have since consistently adhered, we have no hesitancy in now holding that the pronouncements of the opinions in the Otero cases no longer can be given authoritative effect. Our conclusion in this respect is in no manner altered by the circumstance that by way of casual recital the doctrine of these cases lately was reiterated in *Heath v.*

*Green City Irrigation District,* 91 Colo. 202, 13 P. (2d) 1113.

■ Next is questioned whether as a result of the published notice of the dissolution proceedings, the district court acquired such jurisdiction of the subject matter and persons interested therein, particularly over nonappearing owners of outstanding bonds and interest coupons, as to give it the power to dissolve the district and otherwise adjudicate as set forth in the decree.

The views we have hereinabove set out conclude so much of the argument on this point as is based upon the contention that the 1915 and 1941 dissolution statutes impaired the obligation of the bond and interest coupon contracts. Also, the conclusions we have expressed concerning the principal questions, intrinsically demonstrate the unavailability to any nonappearing bond or interest coupon holder of the claim that he has been deprived of due process in this proceeding. As counsel for plaintiffs in error concede, if the dissolution had been in compliance with the statute in effect when the bonds were issued, no holder thereof could raise a jurisdictional question based upon any failure of due process, since he must be held to have agreed to the statutory procedure as a part of his bond contract. In effect this situation attains here. As appears hereinabove, under the 1905 statute, when the specified precedent conditions respecting the district's indebtedness had been complied with, as we have held was the situation, a summary dissolution might be had by a favorable vote of the majority of the resident landowners at an election initiated by a petition from them and the certification of the result to the county clerk and recorder. Except for the ministerial act of certificating the result of the election to the county clerk and recorder, each and every of the procedural steps incident to the dissolution provided by the 1905 act were had in the proceeding before us. The 1915 and 1941 acts, in requiring the court's approval of the dissolution and the

publication of notice of the pendency of such action as procedural steps in its perfection, instead of withdrawing any remedy given by the 1905 bond contracts, in reality provided an additional opportunity for such bondholders to be heard in the dissolution proceedings; consequently there was no denial of due process of law as to any of them. See, 12 Am. Jur., p. 279, §582.

We are aware that in *Beck v. Otero Irr. Dist.*, 50 F. (2d) 951, United States District Judge Kennedy decided that the decree of a Colorado court dissolving an irrigation district under the procedure prescribed by the 1915 act, did not preclude the holders of outstanding bonds from seeking equitable relief after the dissolution of the district. At least partially, this conclusion was grounded upon the theory that such bondholders were entitled to enforce additional cumulative taxation against the district as a whole even after the levies for the full amount of the bond principal and interest had been made, such being the doctrine of *Norris v. Montezuma Valley Irr. Dist.*, 248 Fed. 369, which, however, is inconsistent with the principles announced by many of the decisions of our court, and was repudiated expressly by us in *Interstate Trust Co. v. Montezuma Irr. Dist.*, *supra*. In these circumstances, the Beck-Otero Irrigation District case is without decisive effect.

As has been mentioned, upon the basis of an affirmative plea in a petition of intervention by certain landowners in the district of the defendants in error here, the court decreed: "That all bonds, bond interest coupons, and warrants maturing more than six years prior to the commencement of the proceeding herein are subject to the bar of the statute of limitations."

As may be inferred, neither the directors' petition for dissolution nor the plan of dissolution proposed by them or the landowners included or was grounded upon the claim that the outstanding bonds and interest coupons were barred by the statute of limitations. The inclusion of the quoted paragraph in the decree is attacked upon

the grounds: (1) That if in any circumstance any limitation is applicable, such must be by the eighteen-year statute relating to real estate, section 136, chapter 40, '35 C.S.A., and not by the six-year statute, section 1, chapter 102, '35 C.S.A. (2) That the attempted invocation of the bar of the statute affects personal rights, as distinguished from matters in rem, and could not be properly imposed against nonappearing bondholders served with process only by publication. (3) That the provisions of section 542, supra, as amended in 1941, relating to the statute of limitations cannot be given retroactive effect, and (4) that the statute of limitations was an affirmative defense only available to the district itself, and so might not be raised in the manner here attempted.

As appears from previous statements herein, the sole and only remedy the bondholders ever had to enforce the payment of the bond and interest indebtedness was to compel the levies required by the statute. Since, at the time the dissolution proceedings were instituted, this cause of action had ceased to exist by the circumstance that all of the required levies had been made, we fail to perceive the necessity for, or efficacy of, the declaration of the decree that a cause of action which had already lapsed through the performance of the bond contract also was barred by the statute of limitations. Because of this view we are of the opinion that the quoted paragraph and the previous findings with respect thereto should be stricken from the decree as surplusage. This elimination makes hypothetical the foregoing serious question raised as to the propriety of this provision being included in the decree. Likewise, since neither the dissolution proceedings nor the election plan and notice attendant thereto, were grounded upon the theory that the outstanding indebtedness of the district was barred by any statute of limitations or invoked the provisions of section 542, supra, as amended in 1941 with

respect thereto, we express no view concerning the validity or effect of this feature of the 1941 act.

Except as to the references to the applicability of the statute of limitations, which are to be stricken from the decree, the judgment, as so modified, is affirmed.