CITY OF STERLING ET AL. *v.* COMMERCIAL SAVINGS BANK OF STERLING.

No. 15,425.

CITY OF STERLING ET AL. *v.* BRINKER.
(181 P. [2d] 361)

Decided May 19, 1947.

Mr. RAYMOND M. SANDHOUSE, Mr. THOMAS KEELY, for plaintiffs in error.

Mr. T. E. MUNSON, for defendant in error in No. 15,424. Messrs. BARTELS, BLOOD & BANCROFT, Mr. MYLES P. TALLMADGE, for defendant in error in No. 15,425.

*En banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

ON June 14, 1920, pursuant to the provisions of chapter 151, S. L. 1899 (sections 9464-9513, inclusive, C. L. 1921), the City of Sterling, Colorado, by resolution of its city council created a paving district known as "Sterling Central Paving District," and authorized the execution of a contract for the construction of said improvements in the business district of the city.

Thereafter in June, 1920, bids were duly called for, and on August 17, 1920, the bid of Strange-McGuire Paving Company was accepted and a formal contract entered into between the city and said paving company for the construction of the improvements. March 21, 1921, the city council adopted Ordinance No. 1, Series of 1921, authorizing the issuance of public improvement district bonds in payment of the cost and expenses for constructing said improvements, said bonds to be dated April 15, 1921, to bear interest at six per cent per annum, and to mature April 15, 1941. Thereafter, pursuant to said ordinance, bonds in the sum of $347,000.00, and in denominations of $1,000.00 and $500.00, respectively, were duly issued and delivered to, and accepted by, the contractor and the engineer, in lieu of cash, in payment for the cost of said improvements.

During the twenty-year period between the issuance

of said bonds and the date of maturity thereof, and as money became available from the collection of assessments, bonds were discharged in the sum of $292,000.00, together with interest on the total issue, to date of maturity, at which time there was a balance in the bond redemption fund of $1,242.79. There remained outstanding unpaid bonds on April 15, 1941, in the sum of $54,-500.00 with practically all of the assessments in the district paid.

The Commercial Savings Bank of Sterling owned outright, or had in its hands for collection, a portion of the above-mentioned defaulted bonds in the sum of $16,000.-00, and the J. K. Mullen Investment Company owned $27,500.00 of said bonds. Demand was made by both the bank and the investment company for payment of the bonds held by them, which was refused because there were no funds available with which to pay same. As a result, the bank brought suit February 5, 1942, against the City of Sterling, its treasurer, mayor, and members of the city council to recover a money judgment in the amount of the bonds held by it, plus interest from April 15, 1941, alleging that the shortage or deficit in the district funds was wholly due to the careless and negligent manner in which the financial affairs of the district were conducted. January 14, 1942, the J. K. Mullen Investment Company filed similar complaint against the same parties, and asked for a money judgment in the sum of $27,500.00, plus interest. Later Waller C. Brinker was substituted for the investment company as plaintiff.

While the two complaints were not identical, they were so similar in every respect that all the litigating parties stipulated that the cases should be consolidated for trial in the district court. The trial, finally concluded February 2, 1943, resulted in money judgments against the city, and in favor of the respective plaintiffs in the amounts above stated.

In order to avoid confusion we shall hereafter refer in this opinion to the parties as they appeared below;

that is, as plaintiffs and defendants, unless otherwise designated.

Plaintiffs in error ask reversal of the judgments, contending, inter alia, that the same are contrary to law. We think this contention should be sustained.

■ It has long since been settled and thoroughly established by a long line of decisions that actions for money judgments will not lie against municipal corporations on bonds or warrants, under the circumstances present in this case. *Board of Com'rs v. People,* ex rel., 16 Colo. App. 215, 64 Pac. 675; *Forbes v. Board of Com'rs,* 23 Colo. 344, 47 Pac. 388; *Board of Com'rs v. Sims,* 31 Colo. 483, 74 Pac. 457; *City and County of Denver v. Bottom,* 44 Colo. 308, 98 Pac. 13; *Berkey, Admr. v. Board of Com'rs,* 48 Colo. 104, 110 Pac. 197; *Rio Grande Co. v. Orchard Dist.,* 64 Colo. 334, 171 Pac. 367; *Henrylyn Irr. Dist. v. Thomas,* 64 Colo. 413, 173 Pac. 541; *Alpha Corp. v. Denver-Greeley Dist.,* 110 Colo. 179, 186, 132 P. (2d) 448; *Kiles v. Trinchera Irr. Dist.,* 136 F. (2d) 894, 897.

An exception to the rule announced in the above cases has been recognized where the city, as trustee, diverts, misuses, or misappropriates money which has been collected for payment of its bonds. *Employers Co. v. County Com'rs,* 102 Colo. 177, 78 P. (2d) 380; *Wangnild v. Haxtun,* 106 Colo. 180, 103 P. (2d) 474; *Haxtun v. Wangnild,* 109 Colo. 518, 127 P. (2d) 328.

A discussion of the underlying principles of the rule and exception mentioned above will be found in the following decisions: *State ex rel. v. City of Indianapolis,* 188 Ind. 685, 123 N. E. 405; *Moore v. City of Nampa,* 18 F. (2d) 860; *Smith v. Boise City,* 104 F. (2d) 933; *Blackford v. City of Libby,* 103 Mont. 272, 62 P. (2d) 216; *Gagnon v. City of Butte,* 75 Mont. 279, 243 Pac. 1085; *Potter v. New Whatcom,* 20 Wash., 589, 56 Pac. 394; *Brown-Crummer Inv. Co. v. City of Burbank,* 17 F. Supp. 469; *Board v. Fullen,* 111 Ind. 410, 12 N. E. 298, 13 N. E. 574.

Our court in *Sanborn v. Boulder,* 74 Colo. 358, 373, 221 Pac. 1077, said: "In *Board v. Fullen,* 111 Ind. 410, 12 N.

E. 298, 13 N. E. 572, the court states that the city authorities, in issuing and negotiating local improvement bonds act merely as an agency; not of the city but as special agents of the improvement districts, to accomplish a public end."

In the complaints in the instant cases there were slight variations in the allegations as to the particular alleged wrongful acts committed by the defendants, which, it is contended, caused the shortage or deficit in the district funds, but the trial court considering all the evidence submitted in both cases found that the alleged wrongful acts were as follows: "The city council was negligent and careless in the manner in which it handled the funds of the Central Paving District; [1] that it made unlawful abatements of assessments levied for the purpose of paying the bonds against the said district; [2] that the manner in which it handled the cash paid within the first thirty days after the passage of the assessing ordinance was illegal; [3] that the city has, by its wrongful endeavor to charge the district as though the district had a contract with the defendant city, unlawfully increased the bonded indebtedness of the district more than $80,-000.00; [4] and that in passing the assessment which is insufficient by approximately $56,000.00 to take care of the bonds issued by the said city." (Numbers 1, 2, 3, 4, inserted.)

Under the above authorities plaintiffs were not entitled to recover a money judgment against the City of Sterling for either one or all of the above alleged wrongful acts, except as hereinafter provided, because the city was acting in its governmental capacity performing functions imposed upon it by law for the benefit of the improvement district, and not for its corporate benefit. In addition the record shows, with respect to the alleged unlawful abatements of assessments, that the property involved consisted of a few small lots which had already been sold for general taxes, and a certificate of purchase

issued to the purchaser. No doubt the council was justified in considering the assessments uncollectible.

■ With respect to the second alleged wrongful act of the defendants above-mentioned, the record discloses that there was sufficient money in the bond redemption fund to warrant a call of a few bonds for payment. However, defendants, by reason of the condition of the banks at that time, permitted said money to remain in the bank for a short period rather than make a call of the bonds. It is conceded that there was a resulting loss to the bond fund, occasioned by the above circumstances, of $944.91. It was the mandatory duty of the city treasurer, to call for payment of a suitable number of bonds "whenever funds may be in his hands to the credit of any improvement exceeding six months' interest on the unpaid principal." S. L. '99, c. 151, §37. Not having complied with the statute in this respect the city is liable for the loss occasioned thereby. *Haxtun v. Wangnild, supra; Wangnild v. Haxtun, supra.*

An action similar to the instant cases was brought in the district court of the United States for the Southern District of the District of Idaho by Howard Moore, against the City of Nampa. The complaint, as here, was predicated upon alleged negligent and wrongful acts of the City of Nampa committed prior to the completion of the improvements and the creation of the bond redemption fund. "In his complaint the plaintiff alleged that the defendant, City of Nampa, was negligent in failing to have the preliminary estimate of cost prepared and filed in the manner and amount required by law, in awarding a contract in a sum in excess of the estimated cost, in causing a false and misleading certificate to be issued, in failing to levy valid assessments, and in failing to collect assessments for the payment of plaintiff's bonds or creating or providing a fund for the payment thereof." A demurrer was filed to the complaint and sustained by the district court. On appeal the Circuit Court stated:

"The plaintiff contends that the defendant is liable in damages as for tort, and he asserts that his cause of action sounds in tort, and is based on the proposition that the defendant had the power so to conduct the proceedings that valid assessments would have resulted for the payment of the bonds, and that because of negligent acts and omissions of the defendant and its officers in exercising the granted powers, the assessments failed, and the plaintiff was deprived of his statutory remedy against the property in the district. * * * But the plaintiff seeks to charge the defendant with liability solely on account of alleged acts of negligence of its officers, and thus impose upon the general taxpayers of the city responsibility for the payment of local improvement bonds and defeat the protective purpose of the statute, whereby by express terms the general taxpayer is relieved of all liability for the cost of the local improvement; there being no contention that the money received here was diverted to a corporate purpose, or was used in such manner as to create an obligation on the part of the defendant to repay it.

\* \* \*

"It is to be borne in mind that the officers of the defendant, in making the improvement, were not performing corporate functions of the defendant. They were exercising a special power vested in them with reference to local improvements, in which the city as a whole was not concerned. * * * In all the transactions here involved they were but instrumentalities for originating, carrying out, and paying for the expense of local improvements, the cost of which was assessable against the property benefited thereby. In this fact is an insuperable obstacle to the right of the plaintiff to recover herein, for the officers of the city were not acting upon its behalf, and they had no authority to bind it by any act or failure to act in the premises.

"It is well settled that municipal corporations possess no inherent power to levy assessments for local im-

provements, and that their only authority to do so is to be found in legislative acts. 25 R.C.L. 88. And it is uniformly held that in collecting money to pay for special improvements, where there is no liability against the corporation, the corporation authorities do not act as its representatives, but as special agents or instrumentalities to accomplish a public end." *Moore v. Nampa,* 18 F. (2d) 860, 862, and the circuit court held that the trial court properly sustained the demurrer to the complaint and dismissed the action.

The City of Nampa case was thereafter taken to the Supreme Court of the United States, petitioner contending that the decision of the Court of Appeals was in conflict with those of the United States Supreme Court and the decisions of other circuits. On review the court held:

"The demurrer was rightly sustained, unless the complaint shows that a breach by respondent of some duty it owed petitioner caused the damage claimed.

\* \* \*

"The bonds were void, as held in the Lucas case, because issued upon assessments made in excess of the engineer's estimate. On the facts disclosed by the complaint, actionable negligence cannot be predicated on the failure of respondent's officers properly to exert their powers and perform their duties in respect of the estimate, assessment and contract for construction of the sewer. Such failure was not a breach of duty owed by respondent to petitioner. He had no relation to the matter until long after the bonds had been issued and sold to another. The facts showing their invalidity were disclosed by the transcript and known to the attorney on whom he relied long before he purchased them. The complaint is not grounded upon anything subsequently occurring." *Moore v. City of Nampa,* 276 U.S. 536, 48 Sup. Ct. 340, 72 L. Ed. 688. In conclusion the court said: "We find no conflict between the decision of the Circuit Court of Appeals in this case and the decision referred to in the petition for the writ."

█ In the present cases the plaintiffs are in no better position than are the contractor and engineer to whom the bonds were originally issued. If there were irregularities in the proceedings relating to the special improvement district, the same could have been remedied or corrected if called to the attention of the city council at the time of, or prior to, the passage of the assessing ordinance, as provided in section 39, chapter 151, S. L. 1899. The action of the city council was final under the statute. Certainly the contractor and the engineer would not be in a position to question any of the acts of the city authorities of which they now complain by reason of the fact that they were parties to, participated, or at least ecquiesced, in all of the acts of which the plaintiffs now complain. McQuillan Municipal Corporations (2d ed.) rev. vol. 6, pp. 119-125, §2428; Dillon, Municipal Corporations (5th ed.), vol. II, p. 1392, §893.

In view of the factual situation here presented, we are of the opinion that the plaintiffs who purchased the bonds approximately twelve years after their issuance have no legal ground upon which to take exception to acts committed prior thereto, and concerning which the original bondholders could not rightly complain.

The defendants are hereby required to augment the bond fund in the sum of $944.91, and thereafter prorate said fund among all of the bondholders, as their interests may appear.

The judgment of the district court in each of the actions is reversed, and the causes are remanded for such further proceedings as may be required to effectuate this opinion.

MR. JUSTICE ALTER concurs in the conclusion.

MR. JUSTICE JACKSON and MR. JUSTICE STONE dissent.